Laura EPSTEIN, Plaintiff,

v.

HAAS SECURITIES CORP., Stanley Aslanian, Jr., L.F. Rothschild & Co., Inc., Eugene K. Laff, Robert Schoenthal, Mathew R. Deane, Francois Mayer, Robert R. Errico, Andrew Berger, Joel Miller, Henry Lorin, Henlor Capital, Ltd., Irwin Zandman, Joelle Harris a/k/a Mrs. Joelle Lorin, Enn Kunnapas, Linda Kunnapas, T.S. Industries, Wondoor, Frank Shannon, Yarrimup (a Panamanian Corporation), J.T. Moran & Co., Inc., John T. Moran, Paul R. Miano, Maureen Steffenson and John Does I–X, Defendants.

Solange LANDAU, Plaintiff,

v.

Toni VALLEN, Haas Securities Corp., Eugene K. Laff, Stanley Aslanian, Jr., Mark Burgess, L.F. Rothschild & Co., Inc., Robert Schoenthal, Mathew R. Deane, Francois Mayer, Robert R. Errico, Andrew Berger, Joel Miller, Kuhns Brothers, Laidlaw, Inc. f/k/a Laidlaw Adams & Peck, Inc., Walter Baur, Henry Lorin, Henlor Capital, Ltd., Joelle Harris a/k/a Mrs. Joelle Lorin, Enn Kunnapas, Linda Kunnapas, Maureen Steffenson, Dr. Irwin Zandman, Capital Shares, Inc., Lawrence C. Caito, H.

Clinton Pollack, Frank Shannon, Yarrimup (A Corporation), J.T. Moran & Co., Inc., John T. Moran, Paul R. Miano, Jacques M. de Stadelhofen, Legal Assistant Corporation and John Does I–IX, Defendants.

R. Craig OVERTURF, Plaintiff,

v.

HAAS SECURITIES CORP., Eugene K. Laff, Stanley Alsanian, Jr., L.F. Rothschild & Co., Inc., Robert Schoenthal, Mathew R. Deane, Francois Mayer, Robert R. Errico, Andrew Berger, Joel Miller, Henry Lorin, Henlor Capital, Ltd., Joelle Harris a/k/a Mrs. Joelle Lorin, Enn Kunnapas, Linda Kunnapas, Toni Vallen, Maureen Steffenson, Dr. Irwin Zandman, Capital Shares, Inc., Lawrence C. Caito, H. Clinton Pollack, Frank Shannon, Yarrimup (A Corporation), J.T. Moran & Co., Inc., John T. Moran, Paul R. Miano, Jacques M. de Stadelhofen, Legal Assistant Corporation and John Does 1–10, Defendants.

L.F. ROTHSCHILD & CO., INCORPORATED, Plaintiff,

v.

Victor M. CASTELAZO, Sr., Individually and as Ancillary Guardian of the Property of Victor M. Castelazo, III, and Laura Christina Castelazo, Defendant.

Victor M. CASTELAZO, Sr., Individually and as Ancillary Guardian of the Property of Victor M. Castelazo, III and Laura Christina Castelazo, Counterclaim Plaintiff,

v.

L.F. ROTHSCHILD & CO., INCORPORATED, Toni Vallen, Kuhns Brothers & Laidlaw, Inc., Walter H. Baur, Leroy Twiste, Gottfried Von Hohenberg, Eugene K. Laff, Stanley Aslanian, Jr., Mark Burgess, Robert Schoenthal, Ma-

---

thew P. Deane, Francois Mayer, Andrew M. Berger, Joel Miller, Henry Lorin, Joelle Lorin, Enn H. Kunnapas, Linda Kunnapas, Maureen Steffenson, Henlor Capital, Ltd., J.T. Moran & Co., Inc., John T. Moran, Paul Miano, Frank Shannon, Yarrimup (A Corporation), Jacques M. de Stadelhofen, Legal Assistant Corp., Counterclaim Defendants.

John T. GROEL, Plaintiff,

v.

L.F. ROTHSCHILD & CO., INC.; L.F. Rothschild, Unterberg, Tobin, Inc.; Haas Securities Corporation; Stanley A. Aslanian; Eugene K. Laff; Ethel Schwartz; Robert A. Spira; Thomas W. Clegg; Henry Lorin; Frank Shannon; Enn Kunnapas; Maureen Steffenson; Joelle Harris; Matthew P. Deane; Robert Schoenthal; Francois J.P. Mayer; Andrew L. Berger; Joel E. Miller; Robert R. Errico and John Does 1 through 10, Defendants.

Nancy J. HERTZFELD and Frances S. Hertzfeld, Plaintiffs,

v.

Eugene K. LAFF, Stanley Aslanian Jr., Marjorie A. Laff, Frank Shannon, L.F. Rothschild & Co., Inc., Haas Securities Corp., Robert Schoenthal, Matthew R. Deane, Francois Mayer, Robert R. Errico, Andrew Berger, Joel Miller, Henry Lorin, Henlor Capital, Ltd., Joelle Harris a/k/a Mrs. Joelle Lorin, Enn Kunnapas, Linda Kunnapas, Maureen Steffenson, Dr. Irwin Zandman, Capital Shares, Inc., Lawrence C. Caito, Yarrimup (a Corporation), J.T. Moran & Co., Inc., John T. Moran, Paul R. Miano and John Does I–IX, Defendants.

Ron BASHAM, individually and as trustee of the Advance Petroleum, Inc. Defined Benefit Pension Plan and Trust, Plaintiff,

v.

L.F. ROTHSCHILD & CO., INC.; L.F. Rothschild, Unterberg, Tobin, Inc.; Haas Securities Corporation; Stanley A. Aslanian; Eugene K. Laff; Henry Lorin; Henlor Capital, Ltd.; Frank Shannon; Yarrimup (a corporation);

Enn Kunnapas; Linda Kunnapas; Maureen Steffenson; Joelle Lorin; Irwin Zandman; Matthew P. Deane; Robert Schoenthal; Francois J.P. Mayer; Andrew L. Berger; Joel E. Miller; Robert R. Errico; J.T. Moran & Co., Inc.; John T. Moran; Paul R. Miano; Capital Shares, Inc.; Lawrence C. Caito; and John Does 1 through 10, Defendants.

Nos. 87 Civ. 9285 (LBS), 88 Civ. 1622 (LBS), 88 Civ. 2749 (LBS), 88 Civ. 4041 (LBS), 88 Civ. 4559 (LBS), 88 Civ. 8819 (LBS) and 89 Civ. 5288 (LBS).

United States District Court,
S.D. New York.

Feb. 21, 1990.

See also 895 F.2d 888.

Gusrae, Kaplan & Bruno (Mark J. Astarita, of counsel), New York City, for plaintiffs Solange Landau and R. Craig Overturf.

Dorsey & Whitney (James R. Kahn and Robert G. Manson, of counsel), New York City, for counterclaim plaintiff Victor M. Castelazo, Sr.

Bressler, Amery & Ross (Lawrence D. Ross, Jordan S. Weitberg and Jon W. Olson, of counsel), Morristown, N.J., for plaintiffs Ron Basham and John T. Groel.

Goodkind, Labaton & Rudoff (Edward Labaton, Richard J. Paley and Arthur M. Neiss, of counsel), New York City, for plaintiffs Nancy J. Hertzfeld and Frances S. Hertzfeld.

Cahill Gordon & Reindel (Thomas J. Kavaler, Leslie Kason, Phillip C. Essig and Richard G. Primoff, of counsel), New York City, for defendants Robert R. Errico and Andrew L. Berger.

Janvey, Berglas & Gordon (Martin S. Berglas, of counsel), New York City, for defendants L.F. Rothschild & Co., Inc., Matthew P. Deane, Joel Miller and Robert Schoenthal.

Paul K. Rooney, P.C. (Paul K. Rooney and Matthew E. Power, of counsel), New York City, for defendants Capital Shares, Inc. and Lawrence Caito.

Rosenman & Colin (Gilbert S. Edelson and Diane da Cunha, of counsel), New York City, for defendant Frank Shannon.

## OPINION

SAND, District Judge.

Plaintiffs, aggrieved investors or representatives of aggrieved investors, are suing a number of individuals and companies alleged to have played some role in a scheme to manipulate the prices of certain securities. Presently before the Court are motions of various defendants: for summary judgment on claims of control person

liability; to dismiss claims of both aiding and abetting and primary liability under federal securities laws for failure to state a claim and for failure to plead fraud with particularity; to dismiss federal securities claims as untimely and because the applicable sections do not create a private cause of action; to dismiss claims under the RICO statute for failure to state a claim; and to dismiss claims for punitive damages, contribution, indemnification and common law fraud.

### I. *Background*

Plaintiffs allege that from around 1984 until the end of 1987, various of the defendants in these cases agreed to artificially increase and maintain the price for certain securities (hereinafter "the manipulated securities"). Defendant Frank Shannon,[1] a resident of the United Kingdom and the principal of defendant Yarrimup (a corporation); defendant Lawrence Caito, a trader and control person of defendant Capital Shares, Inc. (hereinafter "Capital Shares"); and defendant L.F. Rothschild & Co., Inc. (hereinafter "Rothschild") are named by some of the plaintiffs as having been among the conspirators. The alleged goal of the conspiracy was to increase the market price of the manipulated securities while they were being distributed to the public. The conspirators are said to have made and supervised the making of markets for these securities and then to have dominated and controlled these markets. The conspirators' activity is alleged to have consisted of increasing the volume of the trading in the manipulated securities through buying and selling between accounts and by means of fictitious trades.

The broker-dealer defendants, including defendants Haas Securities Corporation (hereinafter "Haas"), Capital Shares, and J.T. Moran & Co., Inc., are alleged to have held themselves out as independent market makers for all or certain of the manipulated securities, when in fact their market making activities consisted at least in part

---

1. Defendant Shannon was named in a criminal complaint for making a false statement on a Schedule 13D filing with the SEC, in violation of the requirements of the Securities Exchange Act of 1934. In March 1989, Shannon pled guilty to one count of violating these reporting requirements.

of illegal and conspiratorial pricing of the markets by the use of material inside information as to market positions.[2] Other defendants are alleged to have participated in the conspiracy by allowing their brokerage accounts to be used as nominee accounts to purchase and sell the manipulated securities. Some defendants are alleged to have withdrawn and concealed profits from the conspiracy by use of controlled, nominee and foreign bank accounts. Defendant Shannon is specifically accused of having helped finance the purchase of manipulated securities in order to insure that the supply of these securities did not exceed the demand at given price levels and in return for the pledging of large amounts of the manipulated securities to him or to Yarrimup. Defendant Caito is alleged to have made markets for some of the manipulated securities through defendant Capital Shares.

On March 16, 1987, the alleged conspiracy was the subject of an extensive article in Barron's entitled: "The Abracadabra Man, Step Right Up and See Him Turn Pennies Into Millions." Plaintiffs maintain that the Article increased the selling pressure on the manipulated securities. On March 19, 1987, defendant Rothschild[3] is alleged to have directed defendant Haas, for whom Rothschild served as a clearing broker, not to increase the total amount of margin in several of the manipulated securities in any customer accounts. At the time it issued these instructions, Rothschild is accused of having non-public information concerning the conspiracy but failing to disclose this information to parties to whom it owed a duty. After complaints by Haas that its ability to trade the securities between customer accounts would be re-

stricted, Rothschild is alleged to have rescinded its directions. Rothschild is also accused of having made decisions to sell out certain of Haas' proprietary positions in the manipulated securities to protect its own proprietary positions. There seems to be no dispute that Rothschild did extend large loans on margin to Haas and to Haas' customers to purchase the manipulated securities.

After the drastic decline in the stock market on Monday October 19, 1987, the activity to artificially raise the prices for the manipulated securities is said to have dramatically increased. On October 28, 1987, Haas closed its doors, ceased doing business and, shortly thereafter, declared bankruptcy. On October 28, 1987, the manipulated securities lost a great deal of their market value. The various plaintiffs in these actions, investors or representatives of investors whose accounts were allegedly used in the scheme and who incurred pecuniary losses, then filed suit, asserting a number of causes of action against the various defendants.

## II. *Discussion*

### A. Motions of Robert Errico and Andrew Berger

The complaints of plaintiffs Landau, Overturf, and Nancy and Frances Hertzfeld name Robert Errico as a defendant and assert that he was a control person for the purposes of Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78t(a) (1981), and Section 15 of the Securities Act of 1933, 15 U.S.C.A. § 77o (1981). The complaints also assert claims of primary liability and of aiding and abetting against

---

**2.** Haas is alleged to have been the primary market-maker for many of the manipulated securities. Stanley Aslanian, the President and a Director of Haas, pled guilty in the United States District Court for the Southern District of New York to conspiring to manipulate the prices of certain of the manipulated securities. Eugene K. Laff, the Chairman, Chief Executive Officer and Secretary of Haas, was convicted of conspiring to manipulate securities, securities fraud and obstruction of justice on December 8, 1989 after a jury trial in the Southern District of New

York. Henry Lorin, the President of Haas's largest customer, defendant Henlor Capital Ltd., pled guilty in the Southern District of New York to conspiring to manipulate the prices of certain of the manipulated securities.

**3.** Defendants Joel Miller, Robert Schoenthal, Matthew Deane, Francois Mayer, and Andrew Berger are members of Rothschild's executive committee. Defendant Robert Errico was the compliance director of Rothschild.

Mr. Errico. The complaints of these same plaintiffs, as well as those of plaintiffs Groel and Basham and counterclaim plaintiff Castelazo, assert similar claims against Andrew Berger. Both Mr. Errico and Mr. Berger move to dismiss the claims, or in the alternative, for summary judgment.

Fed.R.Civ.P. 56(c) stipulates that a motion for summary judgment shall be granted if there is "no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Materiality of facts is determined by applicable substantive law, and a genuine dispute exists over a material fact if a reasonable jury viewing the evidence could decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

■ Plaintiffs contend that summary judgment is inappropriate at this time because "significant relevant discovery has yet to be completed." Specifically, some of the plaintiffs complain that they have yet to take several depositions. It is apparent, however, that almost all of the principal participants in the events which form the basis for these motions have already been deposed by at least some of the plaintiffs. In addition, plaintiffs offer no explanation of how additional depositions of these individuals would make the existence of genu-ine issues of material fact any more likely. Nor do plaintiffs even indicate the nature of the testimony they would seek to elicit. As a matter of law, an opponent of a summary judgment motion who claims to be unable to produce evidence in opposition to the motion because of unfinished discovery must file an affidavit explaining:

1) the nature of the uncompleted discovery, i.e., what facts are sought and how they are to be obtained; and

2) how those facts are reasonably expected to create a genuine issue of material fact; and

3) what efforts the affiant has made to obtain those facts; and

4) why those efforts were unsuccessful.

*Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 926 (2d Cir.1985). *See also* Fed.R.Civ.P. 56(f). In neither their memoranda nor in any of their affidavits have plaintiffs made such a showing. The Court will therefore treat both motions as motions for summary judgment.

### 1. *Control Person Liability*

The parties disagree as to the legal standards which govern control person liability.[4] Defendants Errico and Berger contend that in order to establish a prima facie case of control person liability, plaintiffs must demonstrate a primary violation, that the defendant was a culpable participant in the alleged violation, and that the defendant actually controlled the primary violator.[5] For their part, plaintiffs maintain

---

**4.** Section 20(a) of the Securities Exchange Act provides:

Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C.A. § 78t(a) (1981). Section 15 of the Securities Act provides:

Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under [other sections of the statute], shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

15 U.S.C.A. § 77o (1981).

**5.** At times in their brief, Errico and Berger appear to argue that plaintiffs must show that defendants actually exercised control over the conduct constituting the violation. Defendants cite no authority for this proposition, and it clearly runs counter to this Court's holding in *Katz v. David W. Katz & Co.*, Fed.Sec.L.Rep. (CCH) ¶ 99,669, 1984 WL 2385 (S.D.N.Y.1984),

that they need only show a primary violation by Rothschild,[6] that defendants' role in Rothschild implied control person status, and that defendants were either negligent or knew of the violation.[7] However, the Court need not decide which legal standards to apply, for the claims against defendant Errico cannot withstand scrutiny under either standard and the claims against defendant Berger can withstand scrutiny under both.

■ Although plaintiffs argue that defendant Errico had the "obligation, duty and power" as director of compliance at Rothschild to "control and supervise" the activities of Rothschild, they offer no evidence to support this conclusion. Plaintiffs themselves describe Mr. Errico's role as "assuring that the actions of Rothschild, and its Executive Committee, were in conformity with the applicable federal securities laws and the rules and regulations promulgated thereunder." This description of Errico's role at Rothschild can hardly be said to imply control person status. There has been no suggestion that a director of compliance would as a general matter decide what action to take or direct or supervise the implementation of that action. It is undisputed that Errico was *not* a member of Rothschild's executive committee, which appears to have been the primary decision making body in Rothschild.

Plaintiffs have not offered evidence that Errico actually controlled Rothschild in practice. Plaintiffs refer to testimony indicating that Errico had frequent communications with Haas; might have authored a letter notifying Haas that Rothschild was imposing restrictions on Haas' business activities; participated in the decision to send the letter; received the return letter from Haas; brought the existence of a Barron's article outlining Haas' activities to the attention of a member of the executive committee; reported directly to one of the co-chief executive officers of Rothschild; used the term "we" when testifying about the restrictions put on Haas' activity; and could not identify any specific person designated by Rothschild's executive committee to oversee the firm's relationship with Haas. Plaintiffs also point out that there is no evidence that Errico was supervised or instructed by anybody in practice. This evidence, taken as a whole and with all the inferences drawn in plaintiffs' favor, can demonstrate no more than that Errico participated in the affairs of Rothschild as they related to Haas, not that he controlled them. None of the evidence demonstrates that Errico formulated any of the Rothschild's policies toward Haas. In fact, the evidence indicates that Errico acted as one would expect a director of compliance to act, advising the policy-makers and reporting directly to them.

■ The evidence with respect to defendant Berger is an entirely different matter. Unlike Errico, Berger was a member of the Rothschild's executive committee, and there is testimony to the effect that Berger was one of the top five executives at Rothschild. Berger himself indicates that the "executive committee discussed the firm's business and made decisions regarding the business" and that the committee was a "decision making committee." There is additional testimony to the effect that as a matter of practice committee members would report to the committee about their areas of responsibility, discussions of these matters would ensue, and a collective decision would eventually be made. Based upon this evidence, a factfinder could conclude that Berger's role at Rothschild implied control person status.

that the plaintiff need not allege that the defendant actively exercised the control in the transaction in question. Actual control means the "practical ability to direct the actions of [the controlled person]." *Ross v. Bolton,* Fed.Sec.L. Rep. (CCH) ¶ 94,410, 1989 WL 80428 (S.D.N.Y. 1989) (quoting *Barker v. Henderson, Franklin, Starnes & Holt,* 797 F.2d 490, 494 (7th Cir. 1986)).

6. The existence of a primary violation by Rothschild is not contested by Berger and Errico for the purposes of this motion.

7. It is recognized that courts have formulated different standards for establishing control person liability. *See Metzner v. D.H. Blair & Co.,* 689 F.Supp. 262, 265–66 (S.D.N.Y.1988).

Despite Berger's claim that he took no part in the executive committee's activities relating to Haas, there is also sufficient evidence in the record for a factfinder to determine that Berger, as part of a group, actually controlled Rothschild generally and Rothschild's relationship with Haas specifically. Berger himself testified that the committee did discuss the business of Haas' securities. In their answers, defendants Schoenthal, Miller and Deane, other members of the executive committee, admit that the executive committee "made the managerial decisions which governed certain of Rothschild's actions and policies with regard to certain of Haas' activities." In fact, Deane indicates that matters concerning Haas and its securities became the exclusive province of the executive committee in late June or early July 1987. More specifically, there is evidence to the effect that Deane reported the appearance of the Barron's article to the committee; that the committee received internal analyses of certain of Haas' securities indicating that various stocks for which Haas made markets were overvalued and the likely subject of illegal manipulation; that the committee collectively decided to exert pressure on Haas during the summer of 1987; and that the committee agreed that the proposed debt reduction schedule for Haas was acceptable. Berger himself testified that the committee's perceptions of Haas' difficulties precipitated the institution of changes in the relationship between Rothschild and Haas. Finally, it was reportedly Berger who told defendant Laff to sign personal guarantees of the debts Haas owed to Rothschild "before the sun sets."

Defendant Errico's motion for summary judgment with respect to the claims asserted against him under the theory of control person liability is granted. Defendant Berger's motion for summary judgment on these same claims is denied.

### 2. *Aiding and Abetting*

Errico and Berger contend that the claims of aiding and abetting asserted against them by plaintiffs should be dismissed because they fail to satisfy Fed.R. Civ.P. 9(b) and fail to state a claim. Rule 9(b) provides that: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." To pass scrutiny under Rule 9(b), the allegations in a complaint must give defendants "fair notice of plaintiffs' claims and the grounds upon which they rest" and provide "adequate information to frame a response." *In re Gas Reclamation, Inc. Securities Litigation,* 659 F.Supp. 493, 503 (S.D.N.Y.1987) (hereinafter *"In re Gas"*). As a general matter, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In order to assert a claim for aiding and abetting, plaintiffs must allege:

> (1) a securities law violation by the primary wrongdoer; (2) knowledge of the purported violation on the part of the aider and abettor; and (3) conduct by the aider and abettor constituting substantial assistance in achieving the primary wrongdoer's fraud.

*In re Gas, supra,* at 503. The Court finds that plaintiffs' complaints assert viable claims of aiding and abetting against Berger and Errico and state these claims with sufficient particularity.

With respect to Errico, plaintiffs' complaints assert that Rothschild committed various securities law violations, that Errico as Rothschild's compliance director was charged with assuring that Rothschild's actions were in compliance with the securities laws, and that Errico "intentionally or with reckless disregard" failed to discharge this responsibility. Where a duty is owed by the aider and abettor, recklessness is sufficient to satisfy the knowledge requirement. *ITT, an Int'l Inv. Trust v. Cornfeld,* 619 F.2d 909, 923 (2d Cir.1980); *Mishkin v. Peat, Marwick, Mitchell & Co.,* 658 F.Supp. 271, 273 (S.D.N.Y.1987); *Bernstein v. Crazy Eddie, Inc.,* 702 F.Supp. 962, 978 (E.D.N.Y.1988). Plaintiffs have all plead that Errico owed them a duty of care and the Court is not

prepared to find as a matter of law that no such duty existed. Moreover, the facts asserted against Errico are sufficiently specific to give him notice of the charges against him.

■ There can be little doubt that the numerous allegations against the executive committee are sufficient when taken as a whole to state a claim of aiding and abetting. Berger contends however that the allegations against him as an individual fail to satisfy Rule 9(b). Complaints which assert allegations of fraud against multiple defendants should "inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (1987). Where the fraud was perpetrated by a collective body, however, a plaintiff need not refer to each member of the body in each factual allegation in his complaint. Plaintiffs allege that the executive committee controlled the managerial decisions which governed Rothschild's relationship with Haas and that Berger, as a member of the executive committee, took part in these decisions. Specifically, the executive committee is alleged to have directed that increasingly restrictive limitations be put on the brokerage activities of Haas, sold out certain of Haas' proprietary positions in the manipulated securities, failed to disclose information about Haas and the conspiracy to plaintiffs, and traded in the manipulated securities on the basis of material, non-public information in violation of Rule 10b–5, 17 C.F.R. § 240.10b–5 (1988). The Court finds that plaintiffs have stated their claim of aiding and abetting against Berger with sufficient particularity.

B. Motions of Rothschild, Deane, Schoenthal, Miller, Berger and Errico to Dismiss Securities Law Claims as Untimely

Defendants Rothschild, Deane, Schoenthal, Miller, Berger, and Errico (hereinafter "Rothschild and the individuals") move to dismiss as untimely the securities law claims asserted against them by plaintiffs Groel, Basham, Landau, Overturf, Nancy and Frances Hertzfeld, and counterclaim plaintiff Castelazo. Defendant Errico moves on the same ground to dismiss the securities claims asserted against him by plaintiffs Landau, Overturf, and Nancy and Frances Hertzfeld. In order to resolve defendants' motion, the Court must determine the applicable statute of limitations in the Second Circuit for actions under Sections 10(b), 15 U.S.C.A. § 78j(b) (1981), and 20(a) of the Securities Exchange Act of 1934 and decide whether this statute of limitations applies to each of the plaintiffs.

■ Neither Section 10(b) nor Section 20(a) includes a limitations provision. Where Congress has not expressly provided a limitations period for a federal cause of action, "the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." *Wilson v. Garcia*, 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985). Presently in the Second Circuit, the statute of limitations period applicable to claims brought pursuant to Section 10(b) when the forum state is New York is the most closely analogous state statute of limitations: the six-years-from violation/two-years-from discovery (whichever is later) limitations period for common law fraud. *Armstrong v. McAlpin*, 699 F.2d 79, 86–87 (2d Cir.1983). Even after the Third Circuit's decision in *In re Data Access Systems Securities Litigation*, 843 F.2d 1537 (3d Cir.), *cert. denied sub nom. Vitiello v. I. Kahlowsky & Co.*, —— U.S. ——, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988), which adopted a uniform one-year-from-discovery but no longer than three-years-from-violation limitations period, almost every federal district court in New York when presented with this issue has applied the New York state limitations period. *See Ceres Partners v. GEL Assocs.*, 714 F.Supp. 679, 684–85 (S.D.N.Y.1989); *Huang v. Sentinel Gov't Secs.*, 709 F.Supp. 1290, 1301 n. 10 (S.D.N.Y.1989); *Heineman v. S & S Mach. Co.*, 707 F.Supp. 86, 88 (E.D.N.Y.1989); *Eickhorst v. American Completion and Dev. Corp.*, 706 F.Supp. 1087, 1101–02 (S.D.N.Y.1989); *Metropolitan Secs. v. Occidental Petroleum Corp.*, 705 F.Supp. 134, 138 (S.D.N.Y.1989). *But see Bernstein* 702 F.Supp. at 980–81 (com-

menting favorably upon *Data Access* rule in dicta).

Defendants ask the Court to anticipate a change in the law of the Second Circuit with regard to the applicable statute of limitations for actions arising under Section 10(b). Defendants predict that Court of Appeals will soon embrace the one-year-from-discovery / three-years-from-violation limitations period adopted by the Third Circuit in *Data Access*. Whether or not *Data Access* provides a better rule, this Court is not prepared, in the face of a clear rule in the Second Circuit, to "embrace the exhilarating opportunity of anticipating a doctrine which may be in the womb of time, but whose birth is distant ..." *Spector Motor Serv., Inc. v. Walsh*, 139 F.2d 809, 823 (2d Cir.) (Hand, J., dissenting), *vacated*, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101 (1944). *See also Ceres Partners*, 714 F.Supp. at 684 ("It would be inappropriate for a federal District Court to undertake to hold that the law of this Circuit requires or permits adoption of a federal limitary period for securities law claims that accrue in New York.")

There is no dispute that the actions of plaintiffs Basham, Landau, Overturf and Nancy Hertzfeld, and counterclaim plaintiff Castelazo are not governed by the Third Circuit's holding in *Data Access*. Aside from their arguments in support of the *Data Access* rule, defendants do not offer any other challenge to the timeliness of the actions of these plaintiffs. There is also no dispute that these actions were commenced within six years of the violations. Therefore, the Court denies defendants' motion insofar as it relates to the actions of plaintiffs Basham, Landau, Overturf and Nancy Hertzfeld, and counterclaim plaintiff Castelazo.

■■■ Defendants contend that because plaintiffs Frances Hertzfeld and Groel are residents of Pennsylvania and New Jersey respectively, their securities law claims should be governed by the Third Circuit's *Data Access* limitations period. In order to determine the applicable limitations period for a particular action, a court in the Second Circuit must look to New York law, including New York's borrowing statute. *Ceres Partners, supra*, at 685. The borrowing statute, N.Y. CPLR § 202 (McKinney 1972), provides:

> An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

A claim accrues in the state where plaintiff suffers his injury.

■■■ In securities fraud cases, an individual plaintiff usually suffers his injury in the state in which he resides. *See e.g. Miller v. Grigoli*, 712 F.Supp. 1087, 1090 (S.D.N.Y.1989). The economic injury is said to occur in a location other than where plaintiff resides only in the "extremely rare" case where the party has offered "unusual circumstances." *Gorlin v. Bond Richman & Co.*, 706 F.Supp. 236, 240 n. 8 (S.D.N.Y.1989). Nevertheless, in determining the situs of the injury, a court may properly consider where and how the plaintiff paid for the securities, where plaintiff maintained accounts which reflected the loss, and where the securities were actually handled. *Sack v. V.T. Low*, 478 F.2d 360, 367–68 (2d Cir.1973). In *Lang v. Paine, Webber*, for example, although the plaintiff resided in Ottawa, Canada, he had taken money out of Canada for the express purpose of maintaining an investment in American dollars, transferred a substantial portion of the money he invested from a bank account in Massachusetts, and maintained his account exclusively at the Boston office of his investment firm. *Lang v. Paine, Webber, Jackson & Curtis, Inc.*, 582 F.Supp. 1421, 1425–26 (S.D.N.Y.1984). In addition, all the trades conducted on his behalf took place in Massachusetts. Based upon these facts, the Court found that plaintiff had established his financial base in Massachusetts and that the situs of his

injury was therefore in that state.[8]

■ Plaintiffs point out that their funds were transferred to New York, that account materials were maintained at Rothschild's offices in New York, and that the securities were actually handled by Rothschild in New York. These facts might apply to any out-of-state plaintiff who sued a New York securities broker, and do not by themselves seem to justify departure from the general rule. Nevertheless, Frances Hertzfeld also points out that her entire life savings was transferred to her account in New York. For his part, Groel indicates that he, like the plaintiff in *Lang*, took his funds from an account in one brokerage firm in New York, transferred them to another, and then transferred them to his account in Haas. In light of these circumstances, the Court is not prepared to conclude as a matter of law that Frances Hertzfeld and Groel did not establish New York as their financial base and that New York is not the situs of the injury for the purposes of the borrowing statute.

Perhaps more significantly, the Court also cannot conclude that these plaintiffs failed to commence their respective actions within one year of when they should have discovered defendants' violations. Defendants assert that Hertzfeld and Groel were on inquiry notice as early as late October 1987 when they learned that the value of the securities in their accounts had declined dramatically and that Haas had gone out of business. Defendants also point out that other plaintiffs had commenced actions against Rothschild and others in late 1987, at least one of which was reported in the Wall Street Journal. However, the complaints in those early actions and the Journal article mentioned almost nothing specific about Rothschild's alleged wrongdoing. In addition, Frances Hertzfeld argues that the existence of a fiduciary relationship, concealment of the fraud by defendants, the absence of an opportunity to detect the

fraud, and plaintiffs' lack of financial sophistication and expertise all militate against a finding that she was on inquiry notice. Groel maintains that his status as an individual investor suing corporate insiders and Rothschild's persistent denials of wrongdoing should be considered. The Court is not prepared at this stage in the proceedings to conclude that plaintiffs were on inquiry notice as a matter of law. As a result, defendants' motions to dismiss the complaints of plaintiffs Frances Hertzfeld and Groel are denied.

C. Motions of Capital Shares and Lawrence Caito to dismiss

1. *Fraud with particularity*

Defendants Capital Shares and Caito move to dismiss the complaints of plaintiffs Landau, Overturf, and Nancy and Frances Hertzfeld, and counterclaim plaintiff Castelazo on the ground that each of the claims against them does not allege fraud with sufficient particularity as required by Fed. R.Civ.P. 9(b). The various complaints allege in essence that Capital Shares was a broker dealer; that Caito was a control person of Capital Shares; that both Capital Shares and Caito were members of a conspiracy to artificially and fraudulently increase and maintain the price of certain over-the-counter securities with the goal of realizing illegal profits through trading in these securities at inflated prices; that Capital Shares and Caito discussed and agreed to pricing of these stocks with the other conspirators without regard for accepted economic principles governing pricing of securities markets; that Capital Shares and Caito used inside information to trade in securities; and that Capital Shares and Caito failed to disclose the existence of the conspiracy or any of their alleged violations. Each of the complaints also includes a list of the specific securities whose prices

---

8. *See also Grosser v. Commodity Exch., Inc.,* 639 F.Supp. 1293, 1300 (S.D.N.Y.1986), *aff'd,* 859 F.2d 148 (2d Cir.1988) (place of residence controls where *no indication that plaintiff made another state her financial base or conducted her trading in other state); Heineman v. S & S* Mach. Co., 707 F.Supp. 86, 89 (E.D.N.Y.1989) (because sales agreement executed in New York, securities transferred in New York, and plaintiff contended that he lived in apartment in New York at time of transfer, factual issues remained concerning situs of injury).

were allegedly manipulated as part of the conspiracy.

■ Capital Shares and Caito point out that the complaints fail to provide any details as to how either Capital or Caito furthered the conspiracy. While admittedly short on specifics, plaintiffs complaints do provide defendants with notice of plaintiffs' claims and the grounds upon which they rest and offer sufficient information to frame a response. Defendants are given notice of what they allegedly did, how they allegedly did it, with whom they allegedly conspired, and the alleged purpose of their actions. Moreover, as one court has found:

> [W]here ... a conspiracy is alleged, 'great leeway' is allowed since, by the nature of the conspiracy, details may not be readily known at the time of pleading. This principle is especially applicable in 'market manipulation' cases since the particulars of such frauds are generally exclusively within defendants' control.

*Lazzaro v. Manber,* 701 F.Supp. 353, 372–73 (E.D.N.Y.1988) (citations omitted). Capital Shares and Caito's motion to dismiss the various plaintiffs complaints on Rule 9(b) grounds is denied.

2. *Claims under Section 15(c) of the Securities Exchange Act and Section 17(a) of the Securities Act*

■ Plaintiffs Overturf, Landau, and Nancy and Frances Hertzfeld assert claims against Capital Shares and Caito under Section 15(c) of the Securities Exchange Act, 15 U.S.C.A. § 78o(c) (1981 & Supp.1989). *Asch v. Philips, Appel & Walden, Inc.,* 867 F.2d 776, 777 (2d Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 114, 107 L.Ed.2d 75 (1989), a case cited by neither the movants nor the respondents of this particular motion, holds explicitly that Section 15(c)(1) does not create a private cause of action. The Second Circuit, after observing that the legislative history of Section 15(c) was silent concerning whether private plaintiffs could bring an action under the statute's provisions, concluded that a private cause of action would not further the purposes of the statute. While the holding of *Asch* applies only to Section 15(c)(1) and the plaintiffs in this action do not specify under

which subsection of Section 15(c) they bring their action, the analysis in *Asch* clearly applies to Section 15(c) in its entirety. Plaintiffs' claims are therefore dismissed.

■ Counterclaim plaintiff Castelazo asserts a claim under Section 17(a) of the Securities Act, 15 U.S.C.A. § 77q (1981). In *Anderson v. Lowrey,* 667 F.Supp. 105, 109–10 (S.D.N.Y.1987), this Court reconsidered whether a private right of action existed under Section 17(a) and, based upon recent authority, determined that it did not. Since *Anderson,* other Courts have reached the same conclusion. *See Tobias v. First City Nat'l Bank & Trust Co.,* 709 F.Supp. 1266, 1274–76 (S.D.N.Y.1989); *Eickhorst,* 706 F.Supp. at 1087; *Dubin v. E.F. Hutton Group Inc.,* 695 F.Supp. 138, 147–48 (S.D.N.Y.1988); *Stevens v. Equidyne Extractive Indus. 1980, Petro/Coal Program 1,* 694 F.Supp. 1057, 1066–67 (S.D.N.Y.1988); *Bruce v. Martin,* 691 F.Supp. 716, 724–26 (S.D.N.Y.1988). The Court finds no reason to deviate from its most recent decision, especially in light of the increasing authority in accord. Counterclaim plaintiff Castelazo's claim under Section 17(a) is therefore dismissed.

3. *The Timeliness of Claims under Section 12(2) of the Securities Act of 1933*

■ Capital Shares and Caito argue that the claims asserted against them by plaintiffs Overturf, Landau and the Hertzfelds under Section 12(2) of the Securities Act of 1933, 15 U.S.C.A. § 77l(2) (1981), are time barred. Under that section, suit must be brought "within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence ... In no event shall any action be brought ... more than three years after the sale." *Id.* at § 77m. Where the statute that creates the cause of action also contains a limitations period, a plaintiff must affirmatively plead compliance with the statute of limitations. *Krome v. Merrill Lynch & Co. Inc.,* 637 F.Supp. 910, 914

(S.D.N.Y.1986); *Zola v. Gordon*, 685 F.Supp. 354, 360 (S.D.N.Y.1988). In actions under Section 12(2), plaintiff's complaint must indicate the time and circumstances of the discovery of the fraudulent conduct of the defendants, the reasons why such conduct was not discovered earlier, and the efforts made by plaintiffs in making or seeking such discovery. *Krome, supra*, at 914. *See also Quantum Overseas, N.V. v. Touche Ross & Co.*, 663 F.Supp. 658, 662 (S.D.N.Y.1987) (dismissing complaint where plaintiffs plead only the time and circumstances of discovery). Where plaintiffs have alleged that defendants concealed the violations of Section 12(2), a plaintiff can be excused for not including "detailed allegations of fact at this stage of the litigation." *In re Gas*, 659 F.Supp. at 508. However, the concealment which prevented plaintiffs from discovering the fraud must be alleged with at least some specificity. *Boley v. Pineloch Assocs., Ltd.*, 700 F.Supp. 673, 676–77 (S.D.N.Y.1988).

Plaintiffs' complaints allege only that Capital Shares and Caito's role in the conspiracy to manipulate stocks was unknown to them until less than one year before their actions were commenced. Such an allegation meets none of the requirements outlined in *Krome*. This case does not resemble *In re Gas* because plaintiffs have not only failed to provide any explanation in their complaint for how they discovered defendants' roles or how defendants concealed their roles, they have failed to even allege that the concealment by defendants prevented them from discovering the participation of Capital Shares and Caito. In their briefs, plaintiffs maintain that they did not discover Capital Shares and Caito's role because defendants did not disclose their conspiracy and that they actually discovered Capital Shares and Caito's participation in the conspiracy only after discovery commenced in this action after August 1988. The Court need not decide whether these assertions are sufficiently specific to meet the requirements outlined in *Krome* and *In re Gas*, however, for they are nowhere to be found in plaintiffs' complaint. Plaintiffs' claims under Section 12(2) are therefore dismissed, and plaintiffs are granted leave to replead.

### 4. Racketeer Influenced and Corrupt Organizations Act (RICO) Claims

Plaintiffs Landau, Overturf, and Frances and Nancy Hertzfeld allege violations of 18 U.S.C.A § 1962(a),[9] (b),[10] (c)[11] & (d)[12] (1984), and counterclaim plaintiff Castelazo asserts claims under Section 1962(a), (b) & (d).[13] Capital Shares and Caito seek to dismiss the RICO claims on the grounds that there is no allegation in the complaints that Capital or Caito invested in Haas [the RICO enterprise] in violation of Section 1962(a), acquired an interest in Haas in violation of Section 1962(b), or conducted or participated in the affairs of Haas in violation of Section 1962(c).

---

**9.** Section 1962(a) provides:

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... in which such person has participated as a principal ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities which affect, interstate or foreign commerce.

**10.** Section 1962(b) provides:

It shall be unlawful for any person through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

**11.** Section 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ...

**12.** Section 1962(d) provides:

It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

**13.** Although counterclaim plaintiff Castelazo's complaint alleges violations of 1962(a), (b) & (d), Castelazo's brief inexplicably argues that he has stated claims under only section 1962(c) & (d). The Court will consider defendants' motion to dismiss the claims appearing in Castelazo's complaint.

██ Plaintiffs allege that Capital Shares and Caito were part of a conspiracy spanning several years to artificially increase and maintain the price of certain securities, that they received income through the profits derived from this scheme, and that this income was used to continue the operation of Haas and the conspiracy itself. Essentially, plaintiffs maintain that Capital Shares and Caito were significant participants in a conspiracy to create the appearance of strong liquid markets and volume activity in certain securities and that Haas was a principal vehicle through which the conspiracy was effected. On a motion to dismiss a claim involving securities fraud, "a complaint must be read as a whole, drawing inferences favorable to the pleader." *Yoder v. Orthomolecular Nutrition Inst., Inc.*, 751 F.2d 555, 562 (2d Cir.1985). Reading plaintiffs' complaints as a whole, the Court finds sufficient allegations that Capital Shares and Caito used or invested income from their alleged racketeering in the acquisition of an interest in, or the establishment or operation of, Haas as required by Section 1962(a); acquired or maintained an interest in or control of Haas as required by Section 1962(b); and conducted or participated in the conduct of Haas' affairs as required by Section 1962(c).[14] Capital Shares and Caito's motion to dismiss the RICO claims is therefore denied.

D. Motions of Frank Shannon to Dismiss[15]

1. *Fraud with particularity*

██ Defendant Frank Shannon moves to dismiss various claims asserted against him by plaintiffs Landau, Overturf and Frances and Nancy Hertzfeld, and counterclaim plaintiff Castelazo, and the cross-claims and third-party claims of Rothschild, Deane, Miller and Schoenthal on the grounds that they do not plead fraud with sufficient particularity. Plaintiffs' complaints allege in essence that Shannon: was the principal of a company named Yarrimup, was named in a criminal complaint for making a false statement concerning ownership of one of the manipulated securities on a Schedule 13D filing with the SEC, was brought into the conspiracy by defendant Lorin to assist in the financing of purchases of the manipulated securities in order to insure that the supply of the securities did not exceed the demand, loaned $9,000,000 to defendant Lorin through Yarrimup secured by pledge agreements whereby large blocks of the manipulated securities were pledged to him, loaned in excess of $4,000,000 to other defendants to purchase large amounts of the securities through Haas and other broker-dealers, had shares of the manipulated securities purchased for his benefit in the accounts of other defendants in order to artificially reduce the number of shares available in the market, intended to secret large blocks of the manipulated securities in foreign banks and brokerage accounts in other than his own name, and participated in the conspiracy with the intent to obtain profits for himself.[16] These allegations are sufficiently specific to withstand scrutiny under Rule 9(b).

██ Shannon points out that a number of these allegations are based upon

14. Capital Shares and Caito also argue that "nothing supports" plaintiffs' allegations of a violation of Section 1962(d). The Court has found that plaintiffs' complaints assert violations of Sections 1962(a), (b) and (c), and there are certainly allegations of the existence of a conspiracy to commit those violations. The Court concludes, therefore, that plaintiffs have alleged a violation of Section 1962(d).

15. Shannon's motion to dismiss the claim of plaintiffs Landau, Overturf, and Nancy and Frances Hertzfeld under Section 15(c) of the Securities Exchange Act of 1934 is granted for the reasons stated in the discussion of the identical motion of Capital Shares and Caito. *See, supra,* at 1180.

16. Rothschild also alleges that Shannon loaned in excess of $1 million to one of the issuers of the manipulated securities, obtained 900,000 shares of the issuer in connection with the loan, was a director of one company whose securities were manipulated, was prepared to invest $2.5 million in Haas to keep it going, and invested over $1 million in a company which allegedly became the vehicle for other conspirators after Haas ceased doing business. Some of the allegations in Rothschild's complaint are based upon testimony of defendants Lorin and Laff.

"information and belief." While pleadings of fraud generally cannot be based solely upon information and belief, this rule is not "rigidly enforced" where "much of the factual information needed to fill out plaintiff's complaint lies peculiarly within the opposing parties' knowledge ..." *DiVittorio*, 822 F.2d at 1248; *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir.1972). Nevertheless, plaintiffs must still allege the facts upon which their belief is based. While all the parties asserting claims against Shannon except Rothschild have for the most part failed to comply with this requirement, it is also apparent that much of plaintiffs' information derives directly or indirectly from the criminal complaint filed against Shannon. As a general matter, the institution of government proceedings may serve as a proper factual foundation for information and belief pleading. *See Heit v. Amrep Corp.*, [1975–1976 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 99,077, ¶ 99,078 (S.D. N.Y.1975); *Grossman v. Waste Management, Inc.*, [1983–1984 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 99,530 ¶¶ 97,063, 97,068, (N.D.Ill.1983). The Court believes no purpose would be served by forcing plaintiffs to amend their complaints to reflect the source of their allegations.

 Shannon argues that there are no facts in plaintiffs' complaints from which his participation in the conspiracy can be inferred. The criminal complaint establishes that Shannon through Yarrimup loaned $9,000,000 to one of the alleged conspirators who pledged shares of one of the manipulated securities to induce him to make the loan, gained control over a number of the shares of one of the manipulated securities held in the accounts of other alleged conspirators and others, and failed to disclose his ownership of these shares in his Schedule 13D filing with the SEC. While Shannon claims that his misrepresentation about the extent of his control over these shares related to a period after the alleged conspiracy collapsed, the criminal complaint makes it apparent that many if not all of the shares in question were acquired during the period when the conspiracy was alleged to have been in full swing. With inferences drawn in plaintiffs' favor,

Shannon's knowing participation in the conspiracy could be inferred from these facts.

Shannon also argues that the claims asserted against him by plaintiffs Landau, Overturf, and Frances and Nancy Hertzfeld for aiding and abetting are insufficient under Rule 9(b). The factual allegations against Shannon outlined above assert with sufficient particularity the elements of aiding and abetting: a securities law violation by a primary wrongdoer, knowledge of the purported violation on the part of the aider and abettor, and conduct by the aider and abettor constituting substantial assistance in achieving the primary wrongdoer's fraud. Shannon's motion to dismiss under Rule 9(b) is therefore denied.

### 2. *Claims under Section 10(b)*

Shannon seeks to dismiss for failure to state a claim the claims advanced against him for primary liability and aiding and abetting under Section 10(b) of the Securities Exchange Act of 1934. These claims are asserted by plaintiffs Landau, Overturf, and Nancy and Frances Hertzfeld, counterclaim plaintiff Castelazo and crossclaimant Rothschild.

#### a) Standing

 Shannon argues that Rothschild, which asserts a claim against him for damages based upon his alleged violations of Section 10(b), lacks standing to assert such a claim. Only a purchaser or seller of stock has an actionable claim under Section 10(b). *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461, 464 (2d Cir.), *cert. denied*, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). *See also Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731–34, 95 S.Ct. 1917, 1923–25, 44 L.Ed.2d 539 (1975). A pledgee of securities who holds them as collateral for sums advanced on a customer's account can have standing. *Bradford Secs. Processing Servs., Inc. v. County Fed. Sav. and Loan Assoc.*, 450 F.Supp. 208, 209–10 (S.D.N.Y.1978). Because the purpose of Section 10(b) is to protect persons who are deceived in securities transactions, the securities pledged

must be connected in some way with the proscribed act. *See Chemical Bank v. Arthur Andersen & Co.,* 726 F.2d 930, 943 (2d Cir.), *cert. denied,* 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984).

■ Rothschild alleges that as clearing broker it paid the purchase price of securities purchased by Haas for its customers and held those securities as a general lien against any amount owned to Rothschild by the customer. Rothschild also alleges that it is owed $330,000 by plaintiffs Nancy and Frances Hertzfeld as a result of transactions in the Hertzfelds' accounts apparently involving the manipulated securities. While Rothschild does not expressly allege that it is holding manipulated securities as a lien against the amount owed by Hertzfeld, the Court is prepared to infer this from the asserted facts. The Court concludes therefore that Rothschild has standing to assert a claim under Section 10(b).

### b) Causation

Shannon maintains that none of the parties can assert any claim at all under Section 10(b) because they have not met the causation requirements for such claims. When a plaintiff alleges a "broad based scheme to defraud," he must show "both loss causation—that the misrepresentations or omissions caused the economic harm—and transaction causation—that the violations in question caused the [plaintiff] to engage in the transaction." *Thornock v. Kinderhill Corp.,* 712 F.Supp. 1123, 1127 (S.D.N.Y.1989) (quoting *Bennett v. United States Trust Co.,* 770 F.2d 308, 313 (2d Cir.1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986)).

■ Shannon argues that plaintiffs have not plead loss causation because they have not alleged that their losses were directly caused by some action or inaction by Shannon. In order to claim loss causation, plaintiff must "allege facts showing that the economic harm suffered by [plaintiff] occurred as a result of the challenged activities." *Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57, 61

(2d Cir.1985). Plaintiffs have alleged that Shannon played an important role in a large market manipulation scheme which resulted in a substantial decrease in the value of stocks held by plaintiffs. These allegations, if true, clearly establish loss causation.

■ Shannon also maintains that plaintiffs have not plead transaction causation because they could not have relied upon anything Shannon said or failed to say in purchasing the securities. Plaintiffs allege that the broker-dealers who purchased the manipulated securities did so without authorization. Contrary to Shannon's contention, however, plaintiffs do not have to demonstrate that they themselves actually purchased the securities in reliance upon Shannon's inaction. Causation is adequately pled for the purposes of a 10(b) claim when the defendant was directly involved in the process by which the funds were diverted and "the Court can properly infer that if [the individual who purchased the securities on behalf of plaintiff] had disclosed his scheme to use plaintiffs' funds for the benefit of himself ... plaintiffs would never have permitted the securities transactions ..." *Perez–Robio v. Wyckoff,* 718 F.Supp. 217, 239 (S.D.N.Y. 1989). Plaintiffs have alleged sufficient facts for the Court to make this determination.

### c) Existence of a duty

■ Shannon, citing *Moss v. Morgan Stanley, Inc.,* 553 F.Supp. 1347, 1353 (S.D.N.Y.), *aff'd,* 719 F.2d 5 (2d Cir.1983), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984), contends that the claims of plaintiffs Landau, Overturf and Nancy and Frances Hertzfeld and counterclaim plaintiff Castelazo under Section 10(b) should be dismissed because plaintiffs have not alleged that Shannon owed them any duty.[17] In order to state a claim of aiding and abetting under Section 10(b), however, plaintiffs do not have to allege that Shannon owed such a duty. As dis-

---

**17.** While plaintiffs offer several possible sources for such a duty in their briefs, there is no allegation anywhere in any of the plaintiffs' complaints of the existence of such a duty.

cussed above, plaintiffs must allege a primary violation, knowledge of the violation on the part of Shannon, and substantial assistance rendered the primary wrongdoer. Where there is no duty owed to plaintiffs, the assistance rendered must be "knowing and substantial," but even inaction can be substantial assistance if it was "designed intentionally to aid the primary fraud." *Armstrong*, 699 F.2d at 91. Plaintiffs have alleged that Shannon's assistance was knowing and have presented facts from which substantial assistance can be inferred. Having found that plaintiffs have stated a claim for aiding and abetting against Shannon under Section 10(b), the Court need not decide at this stage of the proceedings whether plaintiffs have also stated a claim for primary liability. *Connors v. Lexington Ins. Co.*, 666 F.Supp. 434, 445 (E.D.N.Y.1987). Shannon's motion to dismiss plaintiffs' claims under Section 10(b) is denied.

### 3. *Claims under Section 12(2)*

■■■ Shannon seeks to dismiss the claims asserted against him by plaintiffs Overturf, Landau and the Hertzfelds under Section 12(2) of the Securities Act of 1933 on the ground that Shannon did not solicit the sale of securities in question. Under *Wilson v. Saintine Exploration and Drilling Corp.*, 872 F.2d 1124, 1126–27 (2d Cir.1989), which construed *Pinter v. Dahl*, 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988), a plaintiff seeking to establish liability under Section 12(2) must allege either that the defendant was in privity with him, or if defendant was a collateral participant, that the defendant "solicited the sales in question for financial gain." The Court also held that "persons who do not meet [the] test for statutory sellers may not be held liable under Section 12 as aiders and abettors." *Id.* at 1127. In reaching this conclusion, the Court noted that aiding and abetting liability was derived from criminal and tort law and found that:

> Section 12(2) does not permit an analogy to tort or criminal law. The provision merely imposes civil liability on a statutory seller in favor of an aggrieved investor; it neither defines violations nor

makes certain acts unlawful. As a result, a criminal law analogy is not available.

*Id.* (citing SEC *amicus* brief). In addition, the Court found that aiding and abetting liability under Section 12 would be "likely as broad as, if not broader than, the ... similar tests rejected by the *Pinter* court." *Id.* (omission in original). Thus, a plaintiff alleging liability under Section 12(2) must assert facts demonstrating more than that the defendant was an aider and abettor.

■■■ Plaintiffs allege that Shannon was an active participant in a conspiracy to inflate and maintain the prices of certain securities and a shareholder in one of the companies whose shares were manipulated. Plaintiffs also allege that it was defendant Laff, not Shannon, who actually solicited and effected the transactions which resulted in the delivery of the manipulated securities to plaintiffs' accounts. Although an essential prerequisite for the success of the conspiracy was the purchase of the manipulated securities by other investors, plaintiffs have really alleged nothing more than that Shannon was a coconspirator. The Court does not believe that there is any reason why a member of a conspiracy should be liable under Section 12(2) solely by virtue of his status when an aider and abettor is not. The requirements for aider and abettor liability and liability as a conspirator are similar—an aider and abettor must have knowledge of the primary violation and must have substantially assisted the primary wrongdoer, while a conspirator must have knowingly participated in the conspiracy. Moreover, conspiracy, like aiding and abetting, finds its roots in criminal and tort law. Finally, Section 12(2) liability under a conspiracy theory would also be as broad if not broader than the tests rejected by the *Pinter* court. Because plaintiffs have not alleged any additional facts from which the Court can infer that Shannon solicited the sale in question, plaintiffs claims under Section 12(2) are dismissed.

### 4. *RICO claims*

■■■ Shannon seeks to dismiss the claims asserted against him under the

RICO statute by plaintiffs Overturf, Landau, Frances and Nancy Hertzfeld, and counterclaim plaintiff Castelazo on the ground that they fail to allege continuity or the threat of continuing racketeering acts. In order to establish a RICO pattern, "it must ... be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity." *H.J. Inc. v. Northwestern Bell Tel. Co.,* — U.S. ——, 109 S.Ct. 2893, 2901, 106 L.Ed.2d 195 (1989). Shannon's argument rests essentially on the fact that plaintiffs have asserted that the conspiracy terminated upon the demise of Haas in October 1987 and thus does not present a threat of continuing racketeering activity. Plaintiffs assert that Shannon, who is alleged to have committed a number of violations of the securities laws, was involved in a large scale conspiracy spanning more than two years to artificially inflate and maintain the prices of certain manipulated securities.

> The Supreme Court held in *H.J. Inc.* that: Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition ... A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time.

*H.J. Inc., supra,* 109 S.Ct. at 2902. The Second Circuit has held that plaintiffs need no longer allege "an ongoing scheme having no demonstrable ending point, ... [w]hat is required is that the complaint plead a basis from which it could be inferred that the acts of racketeering activity were neither isolated nor sporadic." *Beauford v. Helmsley,* 865 F.2d 1386, 1391 (2d Cir.) (en banc), *cert. denied,* — U.S. ——, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989). Courts of Appeals in other Circuits have identified additional factors for assessing "continuity." *See Jones v. Lampe,* 845 F.2d 755, 757 (7th Cir.1988) ("(1) the number and variety of predicate acts and the

length of time over which they were committed; (2) the number of victims; (3) the presence of separate schemes; and (4) the occurrence of distinct injuries"); *Barticheck v. Fidelity Union Bank/First Nat'l State,* 832 F.2d 36, 39 (3d Cir.1987) ("the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity"). The conspiracy alleged by plaintiffs did not involve isolated or sporadic acts, but rather many similar predicate acts committed by a number of perpetrators over a substantial period of time using the same modis operandi and allegedly causing serious financial loss to many unwitting investors. Shannon's motion to dismiss plaintiffs RICO claims is denied.

### 5. *Punitive Damages*

Shannon indicates that plaintiffs Landau, Overturf, and Frances and Nancy Hertzfeld have asserted claims for punitive damages, and he seeks to have them dismissed. Plaintiffs Landau and Overturf deny that they have asserted claims for punitive damages.[18] A review of all three complaints reveals that plaintiffs have in fact requested punitive damages. Hertzfeld First Amended Complaint at 81; Overturf Third Amended Complaint at 75; Landau Third Amended Complaint at 79. Since plaintiffs appear to concede that they have no basis upon which to assert such claims, plaintiffs' claims to the extent that they seek punitive damages are dismissed.

### 6. *Claims for contribution*

■ Shannon seeks to dismiss the claims for contribution asserted against him by Rothschild, Deane, Miller and Schoenthal on several grounds. First, Shannon contends that Rothschild and the "individuals" must admit that they were joint tortfeasors in order to seek contribution in the context of the federal securities law. While it is indeed true that "contribution exists only between joint tort feasors" under federal securities laws, *Greene v.*

---

**18.** The Hertzfelds do not address Shannon's argument at all.

*Emersons, Ltd.*, 102 F.R.D. 33, 36 (S.D.N.Y.1983), *aff'd sub nom.*, *Kenneth Leventhal & Co. v. Joyner Wholesale Co.*, 736 F.2d 29 (2nd Cir.1983), Rothschild and the "individuals" are clearly pleading in the alternative as permitted by the Federal Rules of Civil Procedure. Rothschild and the "individuals" need not concede their liability to the plaintiffs in order to assert a claim for contribution against a third-party defendant or cross-claim defendant. It is enough that third-party plaintiffs assert that if they are adjudged liable to plaintiffs, then they and third-party defendants are joint tortfeasors.

Second, Shannon points out that contribution under the RICO statute is prohibited. *See e.g., Minpeco, S.A. v. Conticommodity Servs., Inc.*, 677 F.Supp. 151, 154 (S.D.N.Y.1988). Rothschild and the "individuals" concede that they are not entitled to contribution for any RICO violation. To the extent that third-party plaintiffs' claim seeks contribution under the RICO statute it is dismissed.

■■■ Third, Shannon maintains that Rothschild and the "individuals" are not entitled to contribution under New York common law because they have not alleged that Shannon breached a duty owing to them or to plaintiffs. Under New York law, it is quite clear that while there is no requirement that the liability of the third-party plaintiff and third-party defendant be based upon a single legal theory, *Merchants Bank of N.Y. v. Credit Suisse Bank*, 585 F.Supp. 304, 309 (1984), a third-party defendant is liable for contribution only if he owes a duty to either the original plaintiffs or those required to respond in damages to the plaintiffs. *See e.g. Garrett v. Holiday Inns, Inc.*, 58 N.Y.2d 253, 460 N.Y.S.2d 774, 777–78, 447 N.E.2d 717, 720–21 (1983). Moreover, if the duty is owed to the third-party plaintiff, "the injury for which recovery is sought in the main action must have been a foreseeable consequence of the alleged breach of the independent duty owed to the defendant-third-party plaintiff by the third-party defendant." *Hanley v. Fox*, 97 A.D.2d 606, 468 N.Y.S.2d 193, 195 (3rd Dep't 1983). *See also*

*Johnson Controls, Inc. v. Rowland Tompkins Corp.*, 585 F.Supp. 969, 973 (S.D.N.Y. 1984). The complaints of Rothschild and the "individuals" do not allege any such duty and offer no facts from which such a duty can be inferred. To the extent that the claims of Rothschild and the "individuals" seek contribution under New York common law, they are dismissed with leave to replead.

### 7. *Indemnification claim*

■■■ Shannon points out that indemnification is unavailable in a case alleging securities fraud or common law fraud. *See Stratton Group, Ltd. v. Sprayregen*, 466 F.Supp. 1180, 1185 n. 4 (S.D.N.Y.1979) ("For reasons of public policy an intentional tort feasor may not escape liability for his conduct by totally shifting it to a joint tortfeasor.") Rothschild Deane, Miller and Schoenthal acknowledge that they are not entitled to indemnification from Shannon. Therefore, to the extent that Rothschild and the "individuals" seek indemnification their claim is dismissed.

### 8. *Common law fraud*

Shannon seeks dismissal of Rothschild's claim of common law fraud on the ground that Rothschild could not have relied upon Shannon's false 13D filed in March 1988. Pointing out that Shannon is alleged to have been a knowing and central participant in the fraudulent scheme effected by defendants, Rothschild argues that it is not simply the false 13D which provides the basis for the common law fraud claim, but also the fraudulent concealment and misrepresentations of Shannon's coconspirators.

■■■ Under New York law, "civil conspiracy to commit fraud, standing alone, is not actionable ... if the underlying independent tort has not been adequately pleaded ..." *Delmalco Ltd. v. Feltner*, 588 F.Supp. 1277, 1278 (S.D.N.Y.1984). When an independent basis for fraud can be established, however, a conspirator, having joined the conspiracy and taken steps to assure its success, may be held responsible for the acts of his coconspirators in fur-

therance of their scheme. *Keller v. Levy*, 265 A.D. 723, 40 N.Y.S.2d 580 (1943).[19] Indeed, all conspirators are liable, jointly and severally, as tortfeasors. 20 N.Y.Jur.2d *Conspiracy—Civil Aspects* § 10, at 12 (1982). To establish an independent basis for fraud, Rothschild must show: representation of a material existing fact, falsity, scienter, deception and injury. *Delmalco Ltd., supra*, at 1278–79.

Shannon does not contend that Rothschild cannot state a claim of fraud against Shannon's alleged coconspirators. Nor does he argue that plaintiffs did not rely on the fraudulent omissions and misrepresentations of other conspirators. Moreover, the Court finds there to be sufficient allegation of a conspiracy to commit fraud of which Shannon was a part. It follows that Shannon, as a conspirator himself, could be liable for the fraud of his coconspirators under the theory of conspiratorial liability. Shannon's motion to dismiss Rothschild's claim for common law fraud is therefore denied.

### III. *Conclusion*

For the reasons described above, Errico's motion for summary judgment on the control person liability claims asserted against him is granted because the Court finds no basis upon which to conclude that he could or in fact did exercise control over Rothschild. Berger's motion for summary judgment on these same claims is denied. The motions of both Errico and Berger to dismiss the aiding and abetting claims asserted against them for failure to plead fraud with particularity and for failure to state a claim are also denied.

The motions of Rothschild, Deane, Schoenthal, Miller, Errico and Berger to dismiss as untimely the federal securities claims asserted against them by plaintiffs Basham, Landau, Overturf and Nancy Hertzfeld are denied. The Court also concludes that it cannot find as a matter of law that the statute of limitations applied by the Third Circuit governs the securities claims of plaintiffs Frances Hertzfeld and Groel or that plaintiffs were on inquiry notice more than one year before the commencement of their actions.

The claims asserted against Capital Shares and Caito under Section 15(c) of the Securities Exchange Act and Section 17(a) of the Securities Act are dismissed because these sections do not create private causes of action. The claims asserted against Capital Shares and Caito under Section 12(2) of the Securities Act of 1933 are dismissed with leave to replead, because plaintiffs have not plead compliance with the statute of limitations or that defendants' concealment prevented them from discovering the violations. The motions of Capital Shares and Caito to dismiss plaintiffs' claims for failure to plead fraud with particularity are denied. Capital Shares and Caito's motion to dismiss plaintiffs' claims under the RICO statute are similarly denied.

The Court denies Frank Shannon's motions to dismiss the claims against him on the grounds of failure to plead fraud with particularity, failure to state a claim under Section 10(b) of the Securities Exchange Act, and failure to state a claim under the RICO statute. The claims asserted against Shannon under Section 12(2) of the Securities Act of 1933 are dismissed because plaintiffs have not alleged, or presented facts from which the Court can infer, that Shannon solicited the sales of the securities in question. Plaintiffs' claims to the extent they seek punitive damages are dismissed because plaintiffs deny that they have asserted such claims.

The claims for contribution asserted against Shannon by Rothschild, Deane, Miller and Schoenthal are dismissed to the extent that they seek contribution under the RICO statute and under New York common law, because the RICO statute

---

**19.** *See also* 20 N.Y.Jur.2d *Conspiracy—Civil Aspects* § 10, at 12–13 (1982) ("Once a conspiracy is established, every act and declaration of each member of the confederacy in pursuance of the original concerted plan is, in law, the act and declaration of them all ... A conspirator may be liable even though he did not take an active part in every branch of the conspiracy ... And the liability that one can incur by subsequently joining a conspiracy may include acts previously done by coconspirators in pursuance of the conspiracy.")

does not provide for contribution and Rothschild and the "individuals" have not alleged that Shannon owed them or plaintiffs a duty as required for a claim for contribution under New York law. Rothschild and the "individuals" are granted leave to replead their claim for contribution under New York common law. The claims for indemnification are dismissed because Rothschild and the "individuals" acknowledge that they are not entitled to indemnification. Shannon's motion to dismiss the claim for common law fraud asserted against him by Rothschild is denied.

The parties are to submit a letter indicating the status of each of these cases by March 12, 1990.

SO ORDERED.