David M. FROMER and the Four Daughters Trust, Plaintiffs,

v.

Larry D. YOGEL, Mrs. Larry D. Yogel, NTG Partners, Omni Financial, L.P., Leo S. Schwartz, Wilmington Trust Company and William T. Saunders, Defendants.

No. 97 CIV. 8829(SAS).

United States District Court, S.D. New York.

March 23, 1999.

Victor A. Sahn, Brian G. Lustbader, Jerry D. Bernstein, Michael Donofrio, Michele D'Avolio, Wachtel & Masyr, New York City, for Plaintiffs.

Laurence J. Kaiser, Karen M. Klein, Law Office of Laurence J. Kaiser, New York City, for Defendants Larry D. Yogel, Mrs. Larry D. Yogel, NTG Partners and Omni Finance, L.P.

Joseph Milano, Schwartz Levin & Milano, LLP, New York City, for Defendant Leo S. Schwartz.

Stanley S. Arkin, Hyman L. Schaffer, Rebecca S. Walker, Arkin Schaffer & Kaplan LLP, New York City, for Defendants Wilmington Trust Co. and William T. Saunders.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Having invested in excess of $1.3 million in several product arbitrage companies, Plaintiff David M. Fromer ("Fromer") allegedly discovered that these companies were actually part of an elaborate "Ponzi" scheme. Having then been sued in a class action by other third-party investors caught up in the scheme (the *Restifo* action), Fromer and the other *Restifo* defendants negotiated a settlement agreement, ending the *Restifo* action as to all parties.[1] Then, having paid the *Restifo* plaintiffs approximately $2.3 million to settle their claims, Fromer and the Four Daughters Trust ("FDT") (together "Plaintiffs" in this action) allege that the other *Restifo* defendants refused to reimburse Plaintiffs for amounts allegedly due them under the settlement agreement.[2]

Plaintiffs are now seeking both the return of their initial investments in the arbitrage companies and the reimbursement of money they paid to settle the *Restifo* lawsuit. Plaintiffs bring federal claims for contribution based on violations of § 10(b) of the 1934 Securities Exchange Act and Rule 10b–5 promulgated thereunder against Defendants Larry D. Yogel ("Yogel"), Mrs. Larry D. Yogel ("Mrs.Yogel"), Leo S. Schwartz ("Schwartz"), Wilmington Trust Company ("Wilmington"), William T. Saunders ("Saunders") and Omni Financial, L.P. ("Omni"), and federal claims for indemnity based on Exchange Act viola-

---

1. *Restifo et al. v. Fromer, et al.,* 93 Civ. 6799(SAS).

2. Plaintiff FDT was not a party to the *Restifo* action or to the settlement agreement which ended that action. FDT is a trust organized in New York and formed for the benefit of Fromer's four daughters and was a limited partner in RMS and a partner in NTG. *See* Cmplt. at ¶ 6; Yogel Defendants' Memorandum of Law ("Yogel Defs.' Memo.") at 4. Apparently, however, FDT paid approximately $550,000 of the $2.3 million *Restifo* settlement, for which it now seeks reimbursement.

tions against Yogel, Mrs. Yogel, Wilmington, Saunders and Omni. Plaintiffs also assert numerous pendent state law claims under theories of contract, fraud, negligence and equitable principles.[3]

Subject matter jurisdiction is premised upon a federal question, 28 U.S.C. § 1331, and principles of supplemental jurisdiction, 28 U.S.C. § 1367(a).

Defendants move to dismiss the claims against them pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6), claiming that the Complaint fails to plead fraud with particularity, fails to state a claim upon which relief can be granted, or states claims which are time-barred.

## I. Standards of Review Under Rule 12(b)(6)

In considering a Rule 12(b)(6) motion to dismiss, a district court must limit itself to "facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 661 (2d Cir.1996). Dismissal of a complaint pursuant to Rule 12(b)(6) is proper "only where it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief." *Scotto v. Almenas*, 143 F.3d 105, 109–10 (2d Cir.1998) (*quoting Branham v. Meachum*, 77 F.3d 626, 628 (2d Cir.1996)(internal quotations omitted)). "The task of the court in ruling on a Rule 12(b)(6) motion 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir.1998) (*quoting Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984)). Thus, in deciding such a motion, the court must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the nonmovant's favor. *See Thomas v. City of New York*, 143 F.3d 31, 36 (2d Cir.1998). Nevertheless, "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir.1996) (internal quotations omitted).

## II. Background

The facts described in this section are drawn exclusively from the allegations in the Complaint. At this time, they are presumed to be true. Plaintiff Fromer invested more than $1.3 million in several companies, including the Premium Sales Corporation ("PSC"), Premium Sales LDL ("LDL") and Premium Sales RMS ("RMS") (together, the "Premium Sales entities"). *See* Complaint ("Cmplt.") at ¶ 1. With this investment, Fromer became one of three shareholders in PSH Management, Inc. ("PSH"), the corporate general partner of LDL and RMS. *See* Cmplt. at ¶¶ 14, 36. Apparently, Fromer was also involved in the management of the Premium Sales entities. *See* Cmplt. at ¶ 55. These companies engaged in the arbitrage of food, health and beauty products, a practice known as "diverting."[4] While these entities engaged in some amount of legitimate diverting, their primary source of funds came from monies received from subsequent investors and constituted a Ponzi scheme. *See* Cmplt. at ¶ 19.

---

3. Plaintiffs pendent state law claims include indemnity and contribution under New York law, equitable indemnity based on negligence, negligent misrepresentation, breach of contract (of certain partnership agreements and of the *Restifo* settlement agreement), breach of oral contract, fraud, aiding and abetting fraud, fraudulent conveyance and breach of fiduciary duty.

4. Diverting, a legitimate business, typically involves the purchase of goods from a manufacturer or distributor in one area of the country for resale to a grocery store chain in another part of the country. Profits derive from price differentials given by manufacturers and distributors to retailers and wholesalers. *See* Cmplt. at ¶ 18.

Defendants Yogel and Schwartz were the remaining two shareholders of PSH, with Yogel as President and CEO. *See* Cmplt. at ¶¶ 14, 34. Yogel, Mrs. Yogel and Schwartz made material misrepresentations and omissions regarding the business practices of the entities to induce Fromer to make his initial investments in the Premium Sales entities. *See* Cmplt. at ¶ 2. Defendants portrayed the entities as a legitimate enterprise when they knew or should have known that it was a Ponzi scheme. *See* Cmplt. at ¶¶ 3, 20–23.

Mrs. Yogel worked with Yogel at the Pennsylvania offices of PSH Management, allegedly running much of the day-to-day operations of the Premium Sales entities. *See* Cmplt. at ¶¶ 8, 47–48. In that capacity she signed false confirmations of purchases and sales of goods that she knew or should have known did not actually take place, thereby perpetrating and/or aiding and abetting the fraud and Exchange Act violations committed by Yogel. *See* Cmplt. at ¶¶ 49–50. In addition, Yogel has attempted to hide his assets from current and potential creditors by transferring substantial amounts of personal assets to Mrs. Yogel. *See* Cmplt. at ¶ 51.

Defendants NTG Partners and Omni Finance, L.P. are Pennsylvania entities owned and/or controlled by Yogel. Cmplt. at ¶¶ 10, 11. Yogel purchased his way into the PSC scheme through payments passed through Omni and NTG to other principals of PSC. *See* Cmplt. at ¶ 22. Yogel also solicited investments in PSC through Omni. *See* Cmplt. at ¶ 24.

Ultimately, the Premium Sales scheme collapsed. *See* Cmplt. at ¶¶ 3, 24. On June 9, 1993, the SEC placed PSC into receivership, resulting in the loss of investments by Fromer and numerous others. In 1993, several investors commenced the *Restifo* action against Fromer, Yogel and Schwartz. *See* Cmplt. at ¶¶ 4, 45. In December 1996, all defendants settled the *Restifo* action for approximately $2.3 million. *See* Cmplt. at ¶¶ 4, 46. Fromer agreed to pay and allegedly did pay the full amount of the settlement, plus associated fees. *See* Cmplt. at ¶ 46. During the settlement negotiations, Yogel and Schwartz acknowledged to Fromer that they would compensate him for the sums he paid to the *Restifo* Plaintiffs. *See* Cmplt. at ¶ 4. Fromer now alleges that Yogel and Schwartz breached this purported promise to reimburse him for the entirety of the settlement. *See* Cmplt. at ¶¶ 4, 46.

Defendants Wilmington and Saunders (together "the Wilmington Defendants") were not named as defendants in the *Restifo* action. Nevertheless, to preclude the possibility of being sued, Wilmington and Saunders settled any claims that the *Restifo* plaintiffs may have had against them for $1 million and obtained a release. *See* Wilmington Defendants' Memorandum of Law ("Wilmington Defs.' Memo.") at 3.

Defendant Wilmington is a commercial bank and trust company organized under Delaware law. *See* Cmplt. at ¶ 12. Wilmington never entered into any contractual relationship with the Premium Sales entities, Fromer, FDT, Yogel or Schwartz. Its involvement arose when a Wilmington client asked Saunders, a Wilmington Vice President in its Business Development Division, to review certain documents relating to LDL and RMS and advise him as to whether they would be suitable investments. Saunders reviewed these materials and also asked Wilmington lawyers to review the LDL and RMS partnership agreements. *See* Cmplt. at ¶¶ 13, 25. This client eventually invested in LDL and RMS and later became a plaintiff in the *Restifo* action against Fromer, Yogel and Schwartz. The documents reviewed by Saunders contained numerous false and misleading statements regarding the Premium Sales entities. While Saunders knew or should have known of the falsity of these statements, he nevertheless disseminated them with the intention that

Fromer and others rely on their truth. *See* Cmplt. at ¶¶ 25–32.

## III. Analysis of Plaintiffs' Federal Claims

### A. Contribution

■ Settling defendants in a federal securities action may sue for contribution. *See, e.g., In re Del-Val Financial Corp. Securities Litigation,* 868 F.Supp. 547, 553–4 (S.D.N.Y.1994) (*citing Musick, Peeler & Garrett v. Employers Insurance of Wausau,* 508 U.S. 286, 113 S.Ct. 2085, 124 L.Ed.2d 194, (1993)). Contribution provides that one of two or more joint wrongdoers should not be required to pay more than its share of a common burden. *See Epstein v. Haas Securities Corp.,* 731 F.Supp. 1166 (S.D.N.Y.1990); *Stratton Group, Ltd. v. Sprayregen,* 466 F.Supp. 1180, 1185 (S.D.N.Y.1979).

■ In *Musick,* the Supreme Court noted that "parties against whom contribution is sought are, by definition, persons or entities alleged to have violated existing securities laws and who share joint liability for that wrong under a remedial scheme established by the federal courts." *Musick,* 508 U.S. at 292, 113 S.Ct. 2085. Accordingly, as in common law claims, contribution for a § 10(b) violation is allowed only among "joint tortfeasors". *See also, In re Leslie Fay Companies, Inc. Securities Litig.,* 918 F.Supp. 749, 756 (S.D.N.Y. 1996); *Stratton,* 466 F.Supp. at 1185 ("The essence of contribution, therefore, is the presence of joint tortfeasors").

### 1. Plaintiffs fail to allege they are joint tortfeasors

■■ The definition of a joint tortfeasor is fairly broad. A finding of liability is not required. Therefore, the fact that the *Restifo* action settled, making an ultimate determination of liability unavailable, does not preclude a contribution action. *See, e.g., In re Del-Val,* 868 F.Supp. at 554 ("A party need not actually be adjudged liable to the injured party to be a joint tortfeasor.") (*citing Stratton,* 466 F.Supp. at 1185). Indeed, a party need not even be sued by the plaintiff in the underlying action in order to be liable for contribution. *See Musick,* 508 U.S. at 286, 113 S.Ct. 2085 (settling defendants' subrogated insurers may sue non-parties for contribution).

What is required, however, is that the Complaint allege that the parties—the Plaintiff and those Defendants from whom contribution is sought—committed a tort, in this case securities fraud. Yet this Complaint fails to allege that Plaintiffs are tortfeasors. Nor does the Complaint allege that Plaintiffs and any of the Defendants are joint tortfeasors. *See* Cmplt. at ¶ 67 ("[r]esponsibility for the damages caused by the plaintiffs herein *rests on these defendants* by reason of *their* violations of Section 10(b) and Rule 10b–5 as alleged herein.") (emphasis added). It is insufficient to claim, as Plaintiffs do, that Yogel and the other Defendants are the tortfeasors and that Fromer was merely an unwitting participant in the scheme.[5]

---

**5.** *See also,* the following exchange between the Court and Plaintiffs' counsel, Mr. Lustbader, at the December 16, 1998 Hearing, at 5–6:

The Court: ...Tell me why you have to take this position that he didn't know, that he didn't act with scienter, that he is an innocent, that he is a victim. Why do you have to do that? Is that to get the 1.3 million that you claim?

Mr. Lustbader: Your Honor, yes. His entire investment in the fraud perpetrated by -

The Court: Because he wants the $1.3 million, he has to be careful not to essentially confess to being a joint tortfeasor? ... Not only do you want the $1.3 million, but you don't even want to pay anything in the settlement. You want to recover the whole $2 million.

Mr. Lustbader: Our client's position is that was what he was promised by the other parties at the time the settlement was entered into.

The Court: That he would pay nothing?

Mr. Lustbader: That's correct, you Honor.

The Court: Why would they promise that?

Mr. Lustbader: Because they recognized that they were in fact liable, but he was at the time the deep pocket for it.

What is unusual here is that Plaintiffs steadfastly insist that they did not violate the securities laws. Disputes over the term "joint tortfeasor" typically arise when a defendant in a securities fraud action seeks contribution from third parties: The defendant becomes a third-party plaintiff but fails to allege that the injuries suffered by plaintiffs in the underlying action were caused by the third-party defendants' violation of the securities laws. *See, e.g., Monisoff v. American Eagle Investments, Inc.,* 955 F.Supp. 40, 41–42 (S.D.N.Y.1997); *Ades v. Deloitte & Touche,* 90 Civ. 4959, 90 Civ. 5056, 1993 WL 362364, at *10 (S.D.N.Y. Sept.17, 1993); *Department of Economic Development v. Arthur Andersen & Co. (U.S.A.),* 747 F.Supp. 922, 933 (S.D.N.Y.1990). As stated in *Ades:*

> A claim for contribution under the federal securities laws ... requires a third-party plaintiff to allege all the elements of the offense[,] ... namely that the Third–Party Defendants either knowingly or reckless[ly] made material misrepresentations to the [injured parties] on which [these parties] relied in the purchase of the [securities] and which proximately caused loss to [the parties].

Here, the problem is that there is nothing in the Complaint that can be read as an allegation or concession of fraudulent conduct by the Plaintiffs. All that is alleged is Defendants' fraud in the original *Restifo* action, *see* Cmplt. at ¶¶ 18–44, and an independent fraud by Defendants on Plaintiffs in refusing to contribute to the settlement. *See* Cmplt. at ¶ 46. These allegations will not support a claim for contribution. Under the federal securities laws, such a claim must be based on allegations that all the parties violated securities laws, not based on allegations that the Defendants defrauded Plaintiffs. *See Arthur Andersen,* 747 F.Supp. at 934 ("claim for contribution under the federal securities laws must be based on allegations that the third-party defendant violated securities laws, not based on allegations that the

third-party defendants defrauded [the third-party plaintiff]").

To present a valid claim that the parties are joint tortfeasors subject to contribution, the use of certain words is not required. All that is required are "allegations that the [parties] were joint participants in the fraud alleged." *In re Del–Val,* 868 F.Supp. at 554 (*quoting Greene v. Emersons, Ltd.,* 102 F.R.D. 33, 36 (S.D.N.Y.1983), *aff'd on other grounds sub nom. Kenneth Leventhal & Co. v. Joyner Wholesale Co.,* 736 F.2d 29 (2d Cir.1984)); *see also, Stratton,* 466 F.Supp. at 1185 n. 6 (S.D.N.Y.1979) ("The term 'joint tortfeasors' means that two or more persons are the joint participants or joint actors in the wrongful production of an injury to a third person."); *In re Crazy Eddie Securities Litigation,* 740 F.Supp. 149, 152 (S.D.N.Y.1990) (same).

**2. Plaintiffs fail to satisfy the scienter requirement**

In this case, however, Plaintiffs try to have it both ways. They acknowledge that they knowingly acted jointly with Defendants but refuse to concede that they themselves knowingly committed fraud. Plaintiffs argue that they are "not required to concede [their] liability in order to assert a claim for contribution." Plaintiffs' Memorandum of Law ("Pls.' Memo.") at 8, (*quoting Epstein,* 731 F.Supp. at 1186–87). Plaintiffs' argument fails for several reasons.

First, *Epstein* itself does not support Plaintiffs' position. While the *Epstein* court did not require a concession of liability at the pleading stage, it did require that to prevail on the claim, defendant (third-party plaintiff) must be "found" liable or concede its own liability. *See Epstein,* 731 F.Supp. at 1187 ("in order to assert a claim ... [i]t is enough that third-party plaintiffs assert that *if they are adjudged liable* to plaintiffs, then they and third-party defendants are joint tortfeasors.") (emphasis added). Because the underlying action was pending, an issue remained as to

whether each of the parties would be found liable. *Id.* Here, a judicial finding of liability is precluded as the parties have settled the *Restifo* action and the statute of limitations on related actions has run. A finding of liability here can only occur through an admission.[6]

Second, simply claiming to be an unwitting participant is insufficient in a fraud claim. In failing to concede liability, Fromer suggests that he did not knowingly participate in the fraud, but relied on the other Defendants to supply him and other investors with truthful and accurate information. An essential element of a claim under § 10(b), and therefore any claim for contribution arising thereunder, is scienter. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 214, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). The scienter element requires a showing that the party—in this case Plaintiffs—knowingly or recklessly violated the federal securities laws. *See, e.g., In re Leslie Fay*, 918 F.Supp. at 756 (S.D.N.Y.1996). Each party must be liable for the injury to third persons to be considered a joint tortfeasor. Accordingly, to be considered a joint tortfeasor, the requisite elements must be alleged or conceded by every party, Plaintiffs included.

Third, by arguing that one can knowingly act jointly to unwittingly commit fraud, Plaintiffs appear to confuse one issue—knowingly acting jointly—about which there is some dispute in this circuit, with another issue—scienter as an element of fraud—about which there is no dispute. District courts in this circuit have defined "joint tortfeasors" in one of two ways. A contribution claim may be based either on a fraud committed jointly (and thus participants were acting jointly knowingly), or on individual acts of fraud lumped together and considered jointly (and thus participants were not acting jointly knowingly,

though each was still committing fraud knowingly).

The majority view appears to be that contribution among joint tortfeasors is limited to "joint participants" in the fraud alleged by the plaintiff. *See, e.g., Advanced Magnetics, Inc. v. Bayfront Partners, Inc. v. Painewebber Inc.*, 92 Civ. 6879, 1998 WL 647167, at *4 (S.D.N.Y. Sept.22, 1998); *see also, In re Crazy Eddie*, 740 F.Supp. at 152 (E.D.N.Y.1990); *Connecticut National Bank v. Reliance Insurance Co.*, 704 F.Supp. 506, 509 (S.D.N.Y.1989); *Greene*, 102 F.R.D. at 36; *Stratton*, 466 F.Supp. at 1185. Other district courts have applied a more expansive definition, holding that contribution among joint tortfeasors is available among independent tortfeasors so long as the parties are concurrently liable for damages. *See, e.g., In re Leslie Fay*, 918 F.Supp. at 756; *In re Del–Val*, 868 F.Supp. at 554; *Ades*, 1993 WL 362364, at *15; *McCoy v. Goldberg*, 778 F.Supp. 201 (S.D.N.Y.1991). The Second Circuit has not resolved the split. *See Kenneth Leventhal & Co. v. Joyner Wholesale Co.*, 736 F.2d 29, 31 n. 1 (2d Cir.1984) ("We do not reach this issue" of the definition of joint participants in fraud).

This issue, however, is not presented here. Plaintiffs' contribution claim is equally deficient under either definition of "joint tortfeasor." This is not a case like *In re Del–Val* or *Ades* where the "joint tortfeasor" standard was held to be satisfied by separate fraudulent actions upon which third parties relied. Those cases only hold that the parties need not have knowingly acted jointly to injure a plaintiff. But all the parties must have knowingly committed fraud. "Independent violations of the securities laws that injure the same plaintiff are sufficient to support actions for contribution as long as the third-party complaint adequately alleges

---

**6.** Plaintiffs argue that the parties have acknowledged their responsibility for and liability to the *Restifo* Plaintiffs in the settlement agreement. But the settlement agreement specifically states that its contents "shall not be construed as, or deemed to be, admissions or concessions ... of any liability or wrongdoing whatever."

that the third-party defendant has violated the securities laws and participated in the underlying fraud." *In re Del–Val,* 868 F.Supp. at 554 n. 8 (*citing McCoy v. Goldberg,* 778 F.Supp. 201, 204–5 (S.D.N.Y.1991)). There is no reason to exempt Plaintiffs from this requirement.

Fourth, and finally, Plaintiffs display a fundamental misunderstanding of the theory of contribution, which is designed to achieve "a fair distribution of fault among parties involved in a wrong." *See Greene,* 102 F.R.D. at 36. As currently alleged, however, Plaintiffs' theory of contribution is precisely the opposite of shared liability.

Plaintiffs allege that each of the Defendants against whom they move for contribution "participated in, and/or aided and abetted, the fraudulent solicitation of investments from the *Restifo* Plaintiffs." [7] By contrast, Plaintiffs do not admit to any violation of the Exchange Act. Fromer alleges that he was at most an unwitting participant, and was, in fact, defrauded himself. FTD does not allege it was involved at all. In constructing the Complaint in this way, Plaintiffs essentially seek to shift the blame to Defendants. As recently explained by Judge Charles Haight in *Advanced Magnetics, Inc. v. Bayfront Partners, Inc. v. Painewebber Inc.,* 92 Civ. 6879, 1998 WL 647167, at *5 (S.D.N.Y. Sept.22, 1998):

> [Plaintiffs] are not saying in effect, "If we committed fraud, [Defendants] had a hand in that wrongdoing." To the contrary, [Plaintiffs] appear to be saying, "If we are somehow adjudged liable, it is really [Defendants'] fault because we relied on what they told us." It strains

the bounds of logic to conclude that [Plaintiffs] could share any fault under their theory of contribution. [Plaintiffs] are attempting to bootstrap a defense to fraud into a case for "joint tortfeasor" liability. Put another way, the contribution claim fails because ... [Plaintiffs'] allegations amount to a claim that [Plaintiffs] acted without scienter and there was therefore no fraud in which to participate.

Plaintiffs' allegations attempt to blame Defendants for the fraud rather than demonstrate that two actors—whether independently or jointly—contributed to a fraud against the *Restifo* plaintiffs. For these reasons, no argument can be made that Defendants and Plaintiffs are "joint tortfeasors" under federal law.

Because Plaintiffs have failed to plead that they "knowingly participated" in any fraud jointly with Defendants, they have failed to state a viable claim for contribution. Plaintiffs' Exchange Act contribution claims must therefore be dismissed.

## B. Indemnification

 Defendants also argue that public policy considerations under the federal securities laws preclude Plaintiffs' claim for indemnification. Indemnification is the flip side of contribution. Whereas contribution involves claims among joint tortfeasors, indemnification may arise when one party claims not to be a tortfeasor. This party, having jointly settled claims with others who are the tortfeasors, now seeks reimbursement from those actually culpable. Indemnification shifts the cost of tor-

---

7. For example, Plaintiffs allege that Yogel's "material misrepresentations and omissions regarding the business practices of PSC, LDL and RMS" were made to "numerous unwitting third parties to entice them to invest." Cmplt. at ¶ 2; that Schwartz, in his capacity as a shareholder of PSH, "successfully induced two of the plaintiffs in the *Restifo* Litigation, Philip Restifo and Harold Oshry to invest an additional $350,000 in part by emphasizing that Schwartz and others (whom Restifo understood to include Fromer) were

increasing their own investments." Cmplt. at ¶¶ 43, 59; that Wilmington and Saunders "prepar[ed], approv[ed] and/or disseminat[ed] materially inaccurate and misleading prospectuses, Investment Summaries and Partnership Agreements for LDL and RMS in violation of § 10(b) of the Exchange Act." Cmplt. at ¶ 58; and that Mrs. Yogel "signed false confirmations and acknowledged confirmations of purchases and sales of goods that did not actually take place." Cmplt. at ¶ 49.

tious conduct to another party. It is not available in a case where the party seeking indemnification has knowingly and wilfully violated the federal securities laws. *See, e.g., Globus v. Law Research Service, Inc.,* 287 F.Supp. 188, 199 (S.D.N.Y.1968), *aff'd in pertinent part,* 418 F.2d 1276, 1288–89 (2d Cir.1969). *See also, In re Leslie Fay,* 918 F.Supp. at 764–5; *In re Del–Val,* 868 F.Supp. at 553; *McCoy v. Goldberg,* 778 F.Supp. 201, 203 (S.D.N.Y.1991); *Stratton,* 466 F.Supp. at 1185 (S.D.N.Y.1979). Such a remedy would allow a tortfeasor to shift liability for intentional misconduct onto another joint tortfeasor and thereby undercut the deterrence goals of the securities laws.

■ As discussed above, however, Plaintiffs claim they did not themselves violate the federal securities laws. The Second Circuit has suggested that indemnity claims under the Exchange Act may proceed where the wrong committed by those seeking indemnity is no greater than ordinary negligence.[8] *Globus,* 418 F.2d at 1288. *See also, Department of Economic Development v. Arthur Andersen & Co. v. Fetherston,* 747 F.Supp. 922, 930–31 (S.D.N.Y.1990); *Greenwald v. American Medcare Corp.,* 666 F.Supp. 489, 493–4 (S.D.N.Y.1987) ("Plaintiffs are entitled to an opportunity to prove that they were without fault and are therefore entitled to indemnity" under federal securities laws).

In *Musick,* the case that confirmed that settling defendants in a federal securities action may sue for contribution, the under-

lying suit was settled by the parties. After funding $13 million of the settlement, respondents in *Musick* brought a separate lawsuit seeking contribution from the attorneys and accountants involved in the stock offering that prompted the original (settled) 10b–5 action. Both the District Court and the Court of Appeals, consistent with Circuit precedent, recognized that respondents had a right to seek contribution for the 10b–5 liability. Shortly after the latter court ruled in respondents' favor, however, the Court of Appeals for the Eighth Circuit held that there can be no implied cause of action for contribution in a 10b–5 action.

The Supreme Court, however, held that federal courts have authority to imply a right to contribution in a 10b–5 action. The Court reasoned that a 10b–5 action was not created by Congress, but was implied by the judiciary. The courts having implied the underlying liability in the first place, it would be unfair to those against whom damages have been assessed for the courts to now disavow authority to allocate that liability on the theory that Congress has not addressed the issue directly.

Congress has recognized a judicial authority to shape, within limits, the 10b–5 cause of action when, in enacting the Insider Trading and Securities Fraud Enforcement Act of 1988 and a statute respecting 10b–5 limitations periods, it included provisions acknowledging the 10b–5 action with-

---

8. Decisions in other circuits suggest that indemnity is simply unavailable under the federal securities laws, but the parties in these cases all shared fault to some extent. *See, e.g., Eichenholtz v. Brennan,* 52 F.3d 478, 483 (3d Cir.1995); *Baker, Watts & Co. v. Miles & Stockbridge,* 876 F.2d 1101, 1104–05 (4th Cir. 1989) (holding that there is no right to indemnification under section 12(2)); *Stowell v. Ted S. Finkel Investment Services, Inc.,* 641 F.2d 323, 325 (5th Cir.1981); *Riverhead Sav. Bank v. National Mortgage Equity Corp.,* 893 F.2d 1109, 1116 (9th Cir.1990) (*citing Laventhol, Krekstein, Horwath & Horwath v. Horwitch,* 637 F.2d 672, 676 (9th Cir.1980)); *First Golden Bancorporation v. Weiszmann,* 942 F.2d

726, 728 (10th Cir.1991). While at least one court has suggested that indemnity is unavailable even to a party without fault, *see King v. Gibbs,* 876 F.2d 1275, 1282 (7th Cir.1989) ("It is difficult to see how a right to indemnification for even innocent persons would serve the deterrent function which underlies the statute. Those innocent parties who would qualify for indemnification, because they lack the scienter required by the rule, cannot be found liable for damages. Thus, a right to indemnification would have no affect on their conduct and would not serve the deterrent function of the statute") (citation omitted), the Second Circuit has not yet adopted this view.

out expressing any intent to define it. Congress has left that task to the courts. The *Musick* Court found that a right to contribution was within the contours of the 10b–5 action. A similar justification for implying a cause of action for indemnity may be found here. Because dismissal of a complaint pursuant to Rule 12(b)(6) is proper "only where it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief," *Scotto*, 143 F.3d at 109–10, Defendants' motions to dismiss this claim are denied.

## IV. Analysis of Plaintiffs' State Law Claims

Plaintiffs assert numerous state law claims under various theories of contract, fraud, negligence and equitable principles, against one or more of the seven Defendants. Defendants move to dismiss these claims for substantive and procedural reasons, including the assertion that they are time barred.

### A. Choice of Law and Timeliness of Plaintiffs' Claims

Defendants contend that many of Plaintiffs' claims are time barred.[9] As an initial matter, to determine whether Plaintiffs' claims were filed within the required period, the Court must decide which law to apply: that of New York, the alleged locus of the activities giving rise to this action, Pennsylvania, where PSH and several of the Defendants were situated and acted, or Delaware, the law of the state of incorporation of PSH and the residence or principal place of business of the Wilmington Defendants.

This is not a diversity action, where a federal court would look to the choice of law rules of the forum state. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Instead, as a federal question

action, the court must use a federal common law choice of law rule in order to decide which state's substantive law governs the purported legal theories at issue. *See Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 795 (2d Cir.1980). Following the federal choice of law rule, the Second Circuit has applied the law of the jurisdiction with the greatest interest in the substantive legal claim at hand. *See id.* at 795.

Applying this test, I conclude that New York law governs all of Plaintiffs' state and common law claims. The Complaint alleges that Plaintiffs reside in New York, and did so at the time of the events giving rise to this action. *See* Cmplt. at ¶¶ 5–6. New York is where Plaintiffs suffered their alleged injuries. Also, at least one Defendant, Schwartz, is a citizen and resident of New York. *See* Cmplt. at ¶ 9. On these alleged facts, I find that New York has the greatest interest in this litigation.

### B. Contribution and Indemnity Claims Under New York Law

Plaintiffs' ninth claim for relief seeks damages against Defendants Yogel and Schwartz for indemnity and contribution under New York state law. For the reasons stated below, Defendants' motions to dismiss Plaintiffs' state law contribution claims are granted, while Defendants' motions to dismiss Plaintiffs' state law indemnity claims are denied.

#### 1. State Law Contribution Claim

Given the existence of a signed settlement agreement among Plaintiffs and the Defendants, the distinction between contribution and indemnity under New York state law takes on added importance. In order to remove a disincentive to settlement, the Legislature amended General Obligations Law ("G.O.L.") § 15–108

---

9. Defendants challenge Plaintiffs claims for equitable indemnity based on negligence, common law fraud, breach of fiduciary duty, negligent misrepresentation, fraudulent conveyance and aiding and abetting fraud, on statute of limitations grounds.

(L.1974, ch. 742) to provide that a settling tortfeasor can neither obtain, nor be liable for, a contribution claim. *See also, Rosado v. Proctor & Schwartz, Inc.,* 66 N.Y.2d 21, 24–25, 494 N.Y.S.2d 851, 484 N.E.2d 1354 (1985); *Mitchell v. New York Hosp.,* 61 N.Y.2d 208, 215, 473 N.Y.S.2d 148, 461 N.E.2d 285 (1984). Therefore, by virtue of the settlement agreement, any claim for contribution under New York state law has been statutorily extinguished and Defendants' motions to dismiss the state law contribution claim are granted.

## 2. State Law Indemnity Claim

Plaintiffs also argue, however, that some portion of the amounts paid in the *Restifo* settlement should be shifted to Defendants on an implied indemnity theory. Inasmuch as an entire shifting of the loss to another would not act as a disincentive to settlement or necessitate an examination of relative degrees of fault, indemnification claims are not barred. *See McDermott v. City of New York,* 50 N.Y.2d 211, 218–219, 428 N.Y.S.2d 643, 406 N.E.2d 460 (1980); *Riviello v. Waldron,* 47 N.Y.2d 297, 418 N.Y.S.2d 300, 391 N.E.2d 1278 (1979). Under New York Law, implied indemnity is a restitution concept which permits shifting the loss because to forbid it would result in the unjust enrichment of one party at the expense of the other. *See Mas v. Two Bridges Associates,* 75 N.Y.2d 680, 555 N.Y.S.2d 669, 554 N.E.2d 1257 (1990). Such claims usually arise from an express agreement by which one party agrees to hold the other harmless for claims brought against it by a third party. *See Knight v. H.E. Yerkes & Assoc., Inc.,* 675 F.Supp. 139, 143 (S.D.N.Y.1987). In the absence of an express contractual provision for indemnification, an implied right of indemnification can still be found. *See Trustees of Columbia University in the City of New York v. Mitchell/Giurgola Associates,* 109 A.D.2d 449, 451–452, 492 N.Y.S.2d 371 (1st Dep't.1985). A person is entitled to implied indemnity when he, "in whole or in part, has discharged a duty which is owed by him but which as be-

tween himself and another should have been discharged by the other." *Matter of Poling Transp. Corp.,* 784 F.Supp. 1045, 1048 (S.D.N.Y.1992) (*quoting McDermott v. City of New York,* 50 N.Y.2d 211, 428 N.Y.S.2d 643, 406 N.E.2d 460 (1980)).

Interpreting New York law, the Second Circuit has identified two sets of circumstances in which a right to implied indemnification may exist. First, indemnification can be implied from the special nature of a contractual relationship between two parties; this has been called the "implied contract theory." *Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.,* 782 F.2d 346, 351 (2d Cir. 1986). Alternatively, indemnification can be implied when there is a great disparity in the fault of two tortfeasors, and one of the tortfeasors has paid for a loss that was primarily the responsibility of the other; this tort-based doctrine has been called "implied-in-law" indemnity. *Id.*

### (a) Implied Contract Theory Indemnity

There is nothing special about the contractual relationship between Plaintiffs and Defendants Yogel and Schwartz that would warrant implying in fact a contract for indemnification. Their partnership agreements were ordinary contracts and the parties point to nothing in them from which an agreement to indemnify could "fairly be implied". *Zapico v. Bucyrus–Erie Co.,* 579 F.2d 714, 719 (2d Cir.1978). Therefore, there can be no implied contract for indemnity in this case.

### (b) Implied–In–Law Indemnity

This tort-based indemnification doctrine applies when there is a great disparity in the fault of two tortfeasors, and one of the tortfeasors is held liable for a loss primarily the responsibility of the other. *Goodpasture,* 782 F.2d at 351. The doctrine is designed to allocate the cost of negligence to the primary tortfeasor, and is often employed in favor of one vicariously liable for another's tort. *Poling,* 784 F.Supp. at

1049. In the instant case the issue is whether Fromer and FDT are entitled to indemnification because by satisfying the *Restifo* settlement they were held vicariously liable for the wrongdoing of others.

■ Because Fromer is a settling tortfeasor, he must show that he "may not be held responsible in any degree" in order to obtain indemnification implied under New York law. *Rosado*, 494 N.Y.S.2d at 854, 484 N.E.2d 1354. As explained above and in *Rosado*, G.O.L. § 15–108 precludes a settling tortfeasor from receiving or obtaining contribution. Therefore, a party who has settled and seeks what it characterizes as indemnification must show that it may not be held responsible in any degree. Unlike federal indemnification claims in this circuit, there is no exception in New York state law for tortfeasors whose level of culpability is less than ordinary negligence. While there is no comparable statutory bar against state indemnification claims as there is against state contribution claims, the settling tortfeasor who "seeks what it characterizes as indemnification" must demonstrate its complete lack of responsibility as the statutory bar to contribution in favor of one who has settled "may not be circumvented by the simple expedient of calling the claim indemnification." *Id.* at 854, 484 N.E.2d 1354. *See also, Monaghan v. SZS 33 Associates, L.P.*, 73 F.3d 1276, 1284–85 (1996) ("common-law indemnity is barred altogether where the party seeking indemnification was itself at fault") (*citing Rosado*).

■ Plaintiffs allege that failure to provide them with relief will result in their being responsible for a disproportionate share of the *Restifo* settlement, far exceeding the measure of their actual wrongdoing. Plaintiffs allege that their damages paid to the *Restifo* plaintiffs arise principally from the misdeeds of the Defendants. Plaintiffs contend that if each party is to be accountable for its fault, then Defendants should answer to Plaintiffs for their share of the *Restifo* settlement amount. In as much as Fromer alleges that he was at most an unwitting participant in the fraudulent activities, and was, in fact, defrauded himself, and FTD does not allege it was involved at all, Plaintiffs Complaint suggests they may be able to meet this standard. Therefore, Defendants' motions to dismiss the state law indemnity claim is denied.

### C. Negligence-related Claims Under New York Law

Plaintiffs' third and sixth claims are negligence-related actions seeking damages against selected Defendants for indemnity based on negligence and negligent misrepresentation.

#### 1. Equitable Indemnity Based on Negligence

New York's N.Y. Civ. Prac. L. & R. § 214(4)(McKinney 1996) [hereinafter CPLR § ——] applies to this claim, which provides that the action must be commenced within three years. Therefore, to the extent the claim seeks recovery for negligence by the Defendants prior to this period, their motion to dismiss is granted. To the extent the claim seeks recovery of amounts paid in the *Restifo* action, the claim is timely. To be timely, however, Plaintiffs must allege negligence regarding the payment of these settlement amounts. The Complaint contains no such allegations. All of the allegations regarding Yogel and Schwartz concern the nature of the investment and manner by which the partnership business was handled. *See* Cmplt. at ¶¶ 72, 73. Similarly, the allegations regarding the Wilmington Defendants concern the drafting of investments materials, all of which are time-barred. *See* Cmplt. at ¶ 75. Plaintiffs make no specific allegations regarding alleged negligence by Mrs. Yogel regarding payment of the *Restifo* settlement. For this reason, Defendants' motions to dismiss this claim for equitable indemnity based on negligence are granted.

## 2. Negligent Misrepresentation

■ There is some dispute concerning the proper statute of limitations for negligent misrepresentation. *See, e.g., Asbeka Industries v. Travelers Indemnity Co.*, 831 F.Supp. 74, 80 (E.D.N.Y.1993) (applying six-year limitation period of CPLR § 213(1)) [10] and *citing Milin Pharmacy, Inc. v. Cash Register Sys., Inc.*, 173 A.D.2d 686, 687, 570 N.Y.S.2d 341 (2nd Dep't.1991) (applying CPLR § 213(1) and citing cases). *But see, Country World, Inc. v. Imperial Frozen Foods Co.*, 186 A.D.2d 781, 782, 589 N.Y.S.2d 81 (2nd Dep't.1992) (applying three-year limitation period of CPLR § 214(4) and (5) [11]); *Ackerman v. National Property Analysts, Inc.*, 887 F.Supp. 494, 508 (S.D.N.Y.1992) (three years, *citing* CPLR § 214(4) and *Fleet Factors Corp. v. Werblin*, 114 A.D.2d 996, 495 N.Y.S.2d 434 (2nd Dep't.1985)). *See also, In re Argo Communications Corp.*, 134 B.R. 776, 794–96 (S.D.N.Y.1991) (noting the inconsistent positions of the New York courts, but holding that where the negligent misrepresentation claim is closely aligned with an intentional misrepresentation claim, then the six-year limitations period applied, but citing CPLR § 213(8) [12]).

In *Argo Communications*, the court relied on the reasoning of *Ambassador Insurance Co. v. Euclid Services, Inc.*, 80 Civ. 1235, 1984 WL 341 (S.D.N.Y. May 24, 1984). There, the District Court held that the six-year limitations period for fraud actions also governs negligent misrepresentation claims under CPLR § 213(8), because such a claim "depends on the act of misrepresentation, be it negligent or inten-

tional...." *Ambassador Insurance*, 1984 WL 341, at *4. The District Court looked to the "essence of the complaint" before reaching its conclusion that CPLR § 213(8) was the applicable statute of limitations. *Id.* The District Court in *Argo* then discussed the decision in *Milin Pharmacy, Inc. v. Cash Register Systems, Inc., supra.* The *Milin* court based its decision on CPLR § 213(1), which provides a six-year limitations period for actions in "which no limitation is specifically prescribed by law." *Id.*

Based on my review of these and other authorities, I hold that Plaintiffs' sixth claim is timely under the six-year statute of limitations provided in CPLR § 213(8). This holding is limited to those instances where negligent misrepresentation is alleged according to facts that also state a cause of action for fraud.[13] Here, Plaintiffs' negligent misrepresentation claim stands in the shadow of fraud.

■ The elements of negligent misrepresentation are (1) carelessness in imparting words; (2) upon which others were expected to rely; (3) upon which they did justifiably rely; (4) to their detriment; and (5) the author must express the words directly, with knowledge they will be acted upon, to one whom the author is bound by some relation or duty of care. *See Mallis v. Bankers Trust Co.*, 615 F.2d 68, 81–82 (2d Cir.1980) (Friendly, J.); *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931) (Cardozo, J.); *Glanzer v. Shep-*

---

**10.** "1. an action for which no limitation is specifically prescribed by law." CPLR § 213(1).

**11.** "4. an action to recover damages for an injury to property except as provided in section 214–c; 5. an action to recover damages for a personal injury except as provided in sections 214–b, 214–c and 215." CPLR §§ 214(4) and (5).

**12.** "8. an action based upon fraud; the time within which the action must be commenced shall be computed from the time the plaintiff

or the person under whom he claims discovered the fraud, or could with reasonable diligence have discovered it." CPLR § 213(8).

**13.** As the District Court noted in *Ambassador Insurance*, n. 7, were the charge of negligent misrepresentation viewed strictly in terms of negligence, the claim would be time-barred by the three-year limitations period provided in CPLR § 214(4). That court, however, applied the fraud limitations period because the essential claim of the complaint sounded in fraud.

*ard,* 233 N.Y. 236, 239–241, 135 N.E. 275 (1922) (Cardozo, J.).

 Negligent misrepresentation is a species of fraud that replaces the required showing of scienter with a showing of negligence. Like actions for fraud, negligent misrepresentation actions typically are based on inference rather than direct evidence. Thus, New York's high standard of "clear and convincing" proof applies to actions for negligent misrepresentation as well as actions for intentional fraud. *See Katara v. D.E. Jones Commodities, Inc.,* 835 F.2d 966, 971 (2d Cir. 1987); *Geler v. National Westminster Bank, USA,* 770 F.Supp. 210, 212–13 (S.D.N.Y.1991); *Gordon v. Bialystoker Center and Bikur Cholim, Inc.,* 45 N.Y.2d 692, 412 N.Y.S.2d 593, 385 N.E.2d 285 (1978).

 Here, Plaintiffs argue that a negligent misrepresentation was made by Defendants to others (the *Restifo* plaintiffs) who then sued Fromer for that misrepresentation. Plaintiffs thus seek to recover for misrepresentations made not to them directly (or at all), but instead to a third party, "the *Restifo* plaintiffs, thereby causing substantial damage to Fromer." Cmplt. at ¶ 87. A number of cases contain language suggesting that non-party reliance can never support a fraud claim. *See, e.g., Warren v. Forest Lawn Cemetery and Mausoleum,* 222 A.D.2d 1059, 635 N.Y.S.2d 874 (4th Dept.1995) (summary judgment granted when plaintiff did not allege that he himself relied on alleged misrepresentation); *Kelly v. L.L. Cool J.,* 145 F.R.D. 32, 38 n. 8 (S.D.N.Y.1992) ("A plaintiff has failed to state a claim for fraud when he alleges merely that the misrepresentation in question was made to or relied on by a third party."); *Shaw v. Rolex Watch, U.S.A., Inc.,* 673 F.Supp. 674, 682 (S.D.N.Y.1987) ("[A] claim for fraud will not lie when premised on the reliance of a third party").

However, most of these decisions address situations presenting a risk of far-flung liability for inchoate or unintended injuries. *See, e.g., Kelly,* 145 F.R.D. at 38 (defendant's failure to include plaintiff's name on defendant's copyright registration or record label alleged to have "perpetrated a fraud on the copyright office or on the public"—presumably including plaintiff); *Shaw,* 673 F.Supp. at 682 (defendant allegedly made misrepresentations to the United States Customs Service in order to gain protection of law barring imports of trademarked goods by anyone other than trademark owner; plaintiff later prevented from importing those goods).

*Peerless Mills, Inc. v. American Tel. & Tel. Co.,* 527 F.2d 445, 450 (2d Cir.1975), is representative. Plaintiffs in that case were the parents-in-law of a securities broker who was allegedly induced to enter the defendant partnership by fraud. As a condition of his entry into the partnership, the broker was required to make a capital contribution of $100,000; to satisfy this obligation, he borrowed 2,000 shares of stock from plaintiffs. In making the loan, plaintiffs did not rely on defendant's alleged misrepresentations regarding the financial health of the partnership. Rather, they were motivated exclusively by a desire to help their son-in-law get ahead in the securities business. When defendant's financial prospects deteriorated, however, plaintiffs sued for fraud. The trial court entered a judgment for defendant, and the Second Circuit affirmed, reasoning that the plaintiffs had failed to show either that defendant had intended the alleged misrepresentations to be conveyed to them or that they had relied on those misrepresentations. *See id.* at 449–51.

In such circumstances, the efficiency-enhancing policy of fraud regulation is not implicated. Even absent a rule against fraud, the *Peerless* plaintiffs would not have demanded verification of defendant's material misrepresentations: Their concern was getting their son-in-law a job, not with ensuring that their loan would be repaid. Protecting them from fraud would therefore not lower transaction costs, as

those costs would not have been incurred in any event. *Peerless* and similar cases stand for the proposition that indirect reliance is insufficient when a plaintiff's injury is an unintended or remote consequence of a defendant's misrepresentations.

Where plaintiff's injury is an intended, direct consequence of defendant's misrepresentations, however, indirect reliance may suffice to support a claim for negligent misrepresentation. Here, Plaintiffs argue that Defendants' misrepresentations enticed "numerous unwitting third parties" to invest in an enterprise that Defendants knew or should have known was a Ponzi scheme. *See* Cmplt. at ¶ 2. For example, Yogel emphasized to potential investors that Fromer would be involved in the management of the partnership, *see* Cmplt. at ¶ 37, and that Fromer was continuing to invest his own money in the partnerships. *See* Cmplt. at ¶ 42. Schwartz induced at least two others to increase their investments through similar references to Fromer, while apparently advising others that it would not be prudent for them to increase the amount of their investments. *See* Cmplt. at ¶ 43. As a result, Defendants secured additional investments, an essential element of the scheme. When the scheme ultimately collapsed, however, Plaintiffs were sued in the *Restifo* action along with Yogel and Schwartz. *See* Cmplt. at ¶ 39.

When misrepresentations made to a few are intended to be conveyed to and relied on by a wider circle of interested third-parties, a claim for negligent misrepresentation by these third-parties might proceed. In this case, however, Plaintiffs do not fall within this circle of interest. Plaintiffs do not allege that Defendants expected or intended that their comments would be conveyed to Plaintiffs. Nor do Plaintiffs allege that they in any way relied on the alleged misrepresentations made by Defendants to other potential investors.

Absent an expectation of reliance by Defendants, and actual reliance by Plaintiffs, Plaintiffs fail to allege required elements for a claim of negligent misrepresentation. For these reasons, Defendants' motions to dismiss this claim for negligent misrepresentation are granted.

### D. Contract Claims Under New York Law

■ Plaintiffs' seventh, tenth and twelfth claims for relief seek damages against selected Defendants for the breach of various written and oral contracts. Under New York law, a plaintiff alleging a breach of contract must show (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages. *See First Investors Corp. v. Liberty Mutual Insurance Co.,* 152 F.3d 162, 168 (2d Cir.1998).

#### 1. Breach of the Partnership Agreements

The Complaint adequately pleads facts sufficient to state a claim for breach of the Partnership Agreements, at least as against Defendant Yogel. Specifically, the Complaint adequately alleges that (1) a contract existed between Yogel and Plaintiffs,[14] *see* Cmplt. at ¶ 92; (2) that pursuant to these contracts, Plaintiffs invested in the partnerships, *see* Cmplt. at ¶ 94; (3) that Yogel breached these contracts by violating certain provisions therein, *see* Cmplt. at ¶ 93; and (4) that Plaintiffs were thereby damaged. *See* Cmplt. at ¶ 94. Therefore, Yogel's motion to dismiss this breach of contract claim is denied.

The Complaint, however, makes no allegation that Defendants Schwartz and Mrs. Yogel were parties to these contracts and no allegation that Defendants Schwartz and Mrs. Yogel breached these contracts. Therefore, the motions to dismiss these claims for breach of contract against De-

---

**14.** These contracts include LDL's Amended and Restated Agreement of Limited Partnership, LDL's Amended and Restated Agreement of Limited Partnership, and/or RMS's Agreement of Limited Partnership. *See* Cmplt. at ¶ 92.

fendants Schwartz and Mrs. Yogel are granted.

## 2. Breach of the Purchase and Sale Agreement

The Complaint adequately pleads facts sufficient to state a claim for breach of the Purchase and Sale Agreement ("P & A Agreement") against Defendants Yogel and Schwartz. Specifically, the Complaint adequately alleges that (1) the P & A Agreement, which was the agreement through which the parties settled the *Restfio* action, existed among Yogel, Schwartz and Fromer, *see* Cmplt. at ¶ 102; (2) that pursuant to the P & A Agreement, "Fromer and defendants Yogel and Schwartz were each to pay their fair share" of the settlement amount to the *Restifo* plaintiffs, *see* Cmplt. at ¶ 102; (3) that Yogel and Schwartz breached the P & A Agreement by failing to pay their share of the settlement amount, while Fromer paid the full amount, *see* Cmplt. at ¶¶ 46, 102; and (4) that Plaintiffs were damaged thereby. *See* Cmplt. at ¶ 103. Thus, the motions to dismiss these claims for breach of the P & A agreement are denied.

## 3. Breach of Oral Contract

The twelfth claim seeks damages against Defendant Yogel alone for breach of an oral contract. The Complaint also adequately pleads facts sufficient to allow this claim against Yogel. Specifically, the Complaint adequately alleges (1) that on numerous occasion, Yogel agreed to reimburse Fromer such that he would be "made whole" for losses suffered in relation to his original investments in the Partnerships and to reimburse Fromer for payments made to settle the *Restifo* action, *see* Cmplt. at ¶ 109; (2) that pursuant to that promise, Fromer and the FDT did pay the *Restifo* Plaintiffs in satisfaction of the P & A Agreements, *see* Cmplt. at ¶ 110; (3) that Yogel breached the agreement by failing to reimburse Plaintiffs, *see*

Cmplt. at ¶ 111; and (4) that Plaintiffs were thereby damaged. *See* Cmplt. at ¶ 111. The motion to dismiss this claim for breach of oral contract is denied.

## E. Fraud-related Claims Under New York Law

Plaintiffs' fourth, eighth, and eleventh claims for relief seek damages against selected Defendants under various New York state law fraud-related theories.

Under New York law, a cause of action based on fraud must be commenced within six years of the accrual of the action or within two years of the date on which the plaintiff discovered, or with reasonable diligence could have discovered, the fraud, whichever is longer. *See* CPLR § 213. Because Plaintiffs' fraud-related claims accrued within the six-year period preceding the filing of the initial Complaint, I find that Plaintiffs' fraud claim is timely. *See Orr v. Kinderhill Corp.*, 991 F.2d 31, 35 (2d Cir.1993) (*citing* CPLR § 213(1) and *Dybowski v. Dybowska*, 146 A.D.2d 604, 605, 536 N.Y.S.2d 838 (2nd Dep't.1989)).

## 1. Common Law Fraud

Plaintiffs assert a claim for common law fraud against Yogel, Mrs. Yogel and the Wilmington Defendants. To adequately plead a claim for common law fraud under New York law, Plaintiffs must allege: (1) misrepresentation of a material fact; (2) the falsity of that misrepresentation; (3) scienter, or intent to defraud; (4) reasonable reliance on that representation; and (5) damage caused by that reliance. *See May Department Stores Co. v. International Leasing Corp.*, 1 F.3d 138, 141 (2d Cir.1993). To the extent allegations in the Complaint rely on statements made prior to the six-year statute of limitations applicable under New York law, *see* C.P.L.R. § 213, the motions to dismiss the claim for common law fraud, as to those statements, are granted to all Defendants.[15]

15. For example, the Complaint cites an "In- vestment Summary" dated November 1, 1991

For the remaining statements, Defendants argue that Plaintiffs' common law fraud claims must be dismissed for failing to plead fraud with the requisite particularity required by F.R.C.P. Rule 9(b). *See* Yogel Defs' Mem. at 12–14; Wilmington Defs' Mem. at 19–21. "[I]n a motion to dismiss a complaint for failure to plead fraud with particularity as required by Rule 9(b), plaintiffs' allegations must be taken as true. The Court must read the complaint generously and draw all inferences in favor of plaintiffs." *Griffin v. McNiff*, 744 F.Supp. 1237, 1244 (S.D.N.Y. 1990) (citations omitted).

A pleading must be sufficiently particular to serve the three goals of Rule 9(b): (1) to provide a defendant with fair notice of the claims against him; (2) to protect a defendant from harm to his reputation or goodwill by unfounded allegations of fraud; and (3) to reduce the number of strike suits. *See DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987); *Red Ball Interior Demolition Corp. v. Palmadessa*, 874 F.Supp. 576, 584 (S.D.N.Y.1995). Yogel and the Wilmington Defendants risk little reputational damage from a civil fraud claim based on the same events for which they settled the *Restifo* action. Nor is this counterclaim a strike suit. The only way Defendants' motion on this claim may be granted is if the counterclaim fails to provide them with fair notice of the claims against them. To that end, allegations which fail to specify the time, place, speaker and, in some cases, the contents of the misrepresentations, lack the "particulars" required by Rule 9(b). *See Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir.1986).

The allegations contained in the Complaint are sufficient to meet the pleading requirements of Rule 9(b), as Plaintiffs have sufficiently identified each Defendant's actions with respect to the fraudulent solicitation of investments in the various partnerships. Thus, the Complaint

apprises each Defendant "of the circumstances surrounding the fraudulent conduct with which it individually stands charged." *In re Blech Securities Litigation*, 928 F.Supp. 1279, 1293 (S.D.N.Y. 1996). For example, the Complaint alleges what misrepresentations and omissions were made, *see, e.g.*, Cmplt. at ¶¶ 26, 28, 30, 32, 55, the time of each such statement or omission, *see, e.g.*, Cmplt. at ¶¶ 25, 29, 48, the party responsible for the misrepresentations and omissions, *see, e.g.*, Cmplt. at ¶¶ 25–29, 31, 32, 49, 58–60, the context of the statements and the manner in which they misled the plaintiff, *see, e.g.*, Cmplt. at ¶¶ 25–29, 31, 32, 49, 50, 57, 58, and what Defendants obtained as a result of the alleged frauds. *See, e.g.*, Cmplt. at ¶¶ 25, 28, 31, 50, 61. In light of the Defendants' intimate involvement with the operation of the partnerships involved in this suit, the Complaint provides Defendants with fair notice of the claims against them. *See Schupak v. Florescue*, 92 Civ. 1189, 1993 WL 256572, at *3–*6 (S.D.N.Y. July 8, 1993). Therefore, the motions to dismiss the common law fraud claims against all Defendants are denied.

## 2. Fraudulent Conveyance

Plaintiffs allege that Yogel, aided and abetted by Mrs. Yogel, transferred substantial amounts of Yogel's personal assets to Mrs. Yogel with an intent to defraud Plaintiffs. To plead a claim of fraudulent conveyance, Plaintiffs must allege that the conveyance was made without fair consideration and will thereby render Yogel insolvent, or that the property remaining after the conveyance is insufficient to pay Yogel's probable liabilities on existing debts as they become mature. *See, e.g., Perlmuter Printing Co. v. Bermuda Star Line, Inc.*, 92 Civ. 1315, 1994 WL 577728, at *3 (S.D.N.Y. Oct. 19, 1994), *citing*, New

(more than six years before Plaintiffs brought their Complaint), as one of the documents

containing fraudulent statements. *See* Cmplt. at ¶ 25.

York Debtor and Creditor Law §§ 273–276 [hereinafter N.Y. DCL]; *Loblaw, Inc. v. Wylie,* 50 A.D.2d 4, 375 N.Y.S.2d 706, 709 (4th Dep't.1975). Plaintiff must also allege its status as a creditor of that person or entity and the existence of an antecedent debt owed to plaintiff. *See id.*

The Yogel Defendants maintain that the fraudulent conveyance claim must be dismissed because Plaintiffs fail to plead this claim with the requisite particularity required by Rule 9(b). Fraudulent conveyance claims under N.Y. DCL § 276 are grounded in fraud and thus must be alleged with particularity. *Atlanta Shipping Corp., Inc. v. Chemical Bank,* 818 F.2d 240, 251 (2d Cir.1987). Under N.Y. DCL § 276, such intent "need not be proven by direct evidence but may be inferred (a) where the transferor has knowledge of the creditor's claim and knows that he is unable to pay it; (b) where the conveyance is made without fair consideration; or (c) where the transfer is made to a related party." *De West Realty Corp. v. I.R.S.,* 418 F.Supp. 1274, 1279 (S.D.N.Y.1976). *See Atlanta Shipping Corp. v. Chemical Bank,* 631 F.Supp. 335, 347 (S.D.N.Y. 1986), *aff'd,* 818 F.2d 240 (2d Cir.1987).

Plaintiffs allege that the conveyances were made without fair consideration, *see* Cmplt. at ¶ 97, and that the transfers were made between related parties. *See* Cmplt. at ¶ 96. This is enough to raise the inference of fraudulent intent. *See Dreieck Finanz AG v. Sun,* 89 Civ. 4347, 1990 WL 11537, at *11–*12 (S.D.N.Y. Feb. 9, 1990). Further, Mrs. Yogel's involvement in the day-to-day operations of PSH and as a signatory on numerous confirmations of purchases and sales of goods raises a strong inference of knowledge with regard to the fraudulent conveyances. For these reasons, the motion to dismiss the fraudulent conveyance claim against Yogel and Mrs. Yogel is denied.

### 3. Aiding and Abetting Fraud

This claim for aiding and abetting fraud is Plaintiffs only state law claim against Defendant Omni and only claim of any kind against Defendant NTG. Plaintiffs allege that Omni and NTG aided and abetted the fraud committed by Yogel and others in connection with the scheme to pay fees to other principals of PSC when Yogel purchased his way into the PSC scheme. Plaintiffs allege that these fee payments were made or received by Omni and NTG. *See* Cmplt. at ¶¶ 22, 106. Plaintiffs also allege that Yogel solicited investments in PSC through LDL, RMS and Omni. *See* Cmplt. at ¶ 24.

In order to state a cause of action for aiding and abetting fraud, Plaintiffs must plead: (1) the existence of a primary fraud; (2) knowledge of the fraud or violation on the part of the alleged aider and abettor; and (3) facts showing substantial assistance by the aider and abettor in the achievement of the violation. *See Dreieck,* 1990 WL 11537, at *2–*3 (*citing Armstrong v. McAlpin,* 699 F.2d 79, 91 (2d Cir.1983); *Decker v. Massey–Ferguson, Ltd.,* 681 F.2d 111, 119 (2d Cir.1982)).

Defendants argue that the Complaint lacks the requisite particularity required under Rule 9(b). I agree. Other than alleging that NTG "received payments" from Yogel as part of the placement of orders for nonperishable items, *see* Cmplt. at ¶ 105, the Complaint does not allege in what way Omni or NTG aided and abetted the fraud, nor the time, place or context in which such aid may have been provided. While the knowledge or scienter element need not be pleaded with particularity, it does require allegations "that provide at least a minimal factual basis for ... conclusory allegations of scienter." *Connecticut National Bank v. Fluor Corp.,* 808 F.2d 957, 962 (2d Cir.1987). Thus, to plead knowledge sufficiently, plaintiff must plead facts that support a "strong inference" that defendant possessed the requi-

site·fraudulent intent. *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir.1987). *See also, Cosmas*, 886 F.2d at 12–13; *Devaney v. Chester*, 813 F.2d 566, 568 (2d Cir.1987). Plaintiffs plead no such facts. Therefore, the motion to dismiss the aiding and abetting fraud claims against Omni and NTG is granted, with leave to amend.

### F. Breach of Fiduciary Duty Under New York Law

Plaintiffs' fifth claim for relief seeks damages against Defendant Yogel for breach of fiduciary duty, and against Defendant Mrs. Yogel for participating in and aiding and/or abetting in the breach.

New York's CPLR § 213(1) applies to Plaintiffs' fiduciary duty claim, which provides that this action must be commenced within six years of the alleged breach. *See, e.g., Dolgoff Holophase, Inc. v. E.I. Du Pont de Nemours & Co.*, 212 A.D.2d 661, 662, 622 N.Y.S.2d 769 (2nd Dep't.1995) (*citing Bey Constr. Co. v. Yablonski*, 76 A.D.2d 875, 876, 428 N.Y.S.2d 728 (2nd Dep't.1980)). Because Plaintiffs' breach of fiduciary duty claim accrued within the six-year period preceding the filing of the original Complaint, the claim is timely.

Under New York law a plaintiff alleging breach of fiduciary duty must show that a fiduciary relationship existed between the parties and a breach of the fiduciary duty. *See Forum Insurance Company v. Zeitman*, 91 Civ. 7980, 1995 WL 546949, at *2–3 (S.D.N.Y. Sept. 13, 1995). Plaintiffs' Complaint satisfies these requirements as to Yogel. The Complaint alleges that Yogel, as President and CEO of PSH, and as Managing Agent of the Partnerships, owed Plaintiffs, as shareholders of PSH and as limited partners of the Partnerships, a fiduciary duty. *See* Cmplt. at ¶¶ 34, 36, 72, 82–83, 85. The Complaint also alleges that Yogel breached that duty by failing to disclose material facts, by commingling the Partnership funds with other funds, and by accepting undisclosed payments and benefits from PSC and its principles. *See* Cmplt. at ¶ 83.

Under New York law·knowing participation in a breach of fiduciary duty· requires that: (1) another entity breached its fiduciary obligation to Plaintiffs; (2) the Defendant knowingly induced or participated in the breach; and (3) the Plaintiffs suffered damages as a result of the Defendant's conduct. *See· Forum Insurance*, 1995 WL 546949, at *5. Plaintiffs' Complaint satisfies these requirements as to Mrs. Yogel as well. The Complaint alleges that Yogel breached his fiduciary duty owed to Plaintiffs, *see* Cmplt. at ¶¶ 82, 83, that Mrs. Yogel knowingly participated in the breach by transferring partnership funds and signing false confirmations for purchases and sales that did not take place, *see* Cmplt. at ¶¶ 48, 49, 84, and that as a result of Mrs. Yogel's actions, Plaintiffs suffered damage. *See* Cmplt. at ¶¶ 66, 85.

Defendants also argue that their alleged fiduciary breach did not proximately cause Plaintiffs' losses. However, a plaintiff alleging a breach of fiduciary duty need not prove that the breach proximately caused its damages but must show only that the fiduciary's act or omission was a substantial factor in causing the Plaintiffs' loss. *See Northwestern Nat'l Ins. v. Alberts*, 769 F.Supp. 498, 506 (S.D.N.Y.1991). Plaintiffs allege that Defendants' breach of their fiduciary obligations was a substantial factor in causing Plaintiffs'·losses. *See* Cmplt. at ¶¶ 66, 85. Accordingly, Defendants' motion to dismiss the claim for breach of fiduciary duty·is denied.

### V. Conclusion

For the reasons stated·above, Defendants' motions to dismiss are granted in part and denied in part. A conference is scheduled for March 30, 1999 at 4:00 p.m.

SO ORDERED:

| | Yogel | Mrs. Yogel | Schwartz | Omni | NTG | Trust | Saunders |
|---|---|---|---|---|---|---|---|
| **Motions to Dismiss Granted:** | | | | | | | |
| 1. Contribution (federal and state) | x | x | x | x | | x | x |
| 2. Indemnity (negligence) | x | x | x | | | x | x |
| 3. Aiding and/or Abetting Fraud | | | | x | x | | |
| 4. Breach of Contract | | x | x | | | | |
| 5. Negligent Misrep | x | x | x | | | x | x |
| **Motions to Dismiss Denied:** | | | | | | | |
| 1. Indemnity (federal and state) | o | o | o | o | | o | o |
| 2. Fraud | o | o | | | | o | o |
| 3. Breach Fid Duty | o | o | | | | | |
| 4. Breach of Contract | o | | | | | | |
| 5. Fraudulent Conveyance | o | o | | | | | |
| 6. Breach of the P & A Agreement | o | | o | | | | |
| 7. Breach of Oral Contract | o | | | | | | |